Michael J. Callanan, Individually and in Behalf of Other Stockholders of the Defendant Railroad Company, Appellant and Respondent, v. Keeseville, Ausable Chasm and Lake Champlain Railroad Company et al., Defendants, and Joseph A. Powers et al., Respondents and Appellants.

Appeal — Court of Appeals cannot control the right to or form of certification of appeals by the Appellate Division — party availing himself of leave to appeal from interlocutory judgment waives right to review final judgment except under questions certified — rescission of contracts — contract may be rescinded for breach of substantial or essential part thereof — when tender of restitution is sufficient in action for rescission of contract — when allegations of fraud may be rejected and judgment of rescission granted upon allegations of breach and repudiation — when findings will be presumed in support of a judgment.

This court cannot control the right or form of certification of appeals by the Appellate Division although it can decline to answer questions certified and frequently does so.

A party by availing himself of leave to appeal from an interlocutory judgment waives, not temporarily, but finally, the right to any review of such judgment, except as can be had by virtue of the questions certified.  An appeal from the final judgment in such case brings up no question relating to the interlocutory judgment.

Where there is no remedy at law open to a party and he has no standing except in equity, an express finding that there is no remedy at law is unnecessary, for that is a logical conclusion flowing from the nature of the action.

This court cannot find facts, but where the evidence is undisputed it may presume that certain facts were found although not expressed.   When a fact is not expressly found and no request is made upon the subject, an appellate court will presume in support of the judgment, but not to reverse it, that such fact was found provided it was conclusively proved and tends to support the express findings.   Only to this extent can findings be implied.

A contract may be rescinded for failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof and for such a breach as substantially defeats its purpose.   It is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.   Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient.

If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation.

Tender of restitution in the complaint is sufficient in an action in equity for rescission.   When rescission is decreed, the judgment relates back to the commencement of the action and the rights of the parties depend on the facts as they then existed.   Anything done by the party in default toward performance after that date is at his peril, for, as subsequently adjudged, there was then no contract to perform and nothing done could be attributed to the contract.   When a plaintiff comes into a court of equity, however, he should do equity and should pay for actual benefits received under the contract to the extent that improvements increase the value of the property affected thereby.

Where a complaint alleges both fraud in making a contract and a continuous breach and repudiation thereof as the grounds upon which it should be rescinded, the allegations of fraud may be rejected, and judgment granted upon the allegations of breach and repudiation.

On the issue of fraud as a ground of rescission of a contract, contemporary and preceding conversations, both those involving representations and

those tending to show that the plaintiff relied upon them, are competent, and although the plaintiff does not succeed on the issue of fraud, still the receipt of such evidence is not error.

Certain contractors acting under an agreement with a steam railroad company to, among other things, reconstruct its road into an electric railroad, to furnish power therefor and cars for the business of the company, to acquire additional property and to extend the road, obtained under the agreement, and by the purchase of a small amount of stock, absolute control of the corporation and the possession of bonds issued by the road, and to a large extent used such bonds for purposes other than the performance of their contract, and caused the railroad to enter into an agreement with an electric light and power company owned by them to their own profit and to the detriment of the road. There was a substantial and nearly absolute failure to perform on the part of the contractors, although performance was practicable and quite within their power. In this action, brought by a stockholder on behalf of himself and others to rescind such contract and recover possession of the bonds and stock and to place the company so far as possible in the position it occupied when the contract was made, the complaint in which tenders restitution to the contractors of all benefits received by the road, *held*, that the facts found support the judgment directing rescission of the contract and that the evidence supports the findings.

*Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.*, 131 App. Div. 306, reversed.

(Argued June 3, 1910; decided October 11, 1910.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 20, 1909, which modified and affirmed as modified an interlocutory judgment entered upon the report of a referee.

The Keeseville, Ausable Chasm and Lake Champlain Railroad Company is a domestic corporation organized in 1889 to build and operate a steam railroad six miles long between Port Kent in the county of Essex and Keeseville in the county of Clinton. The authorized capital stock was $60,000, divided into 6,000 shares of the par value of ten dollars each, of which only 3,071 shares had been issued at the date of the contract mentioned hereafter, the remainder, 2,929 shares being in the treasury. The company completed its road in December, 1889, equipped it with the necessary rolling stock and appliances and for about fourteen years, or until June 10th, 1903,

had continuously and successfully operated it.  At that date
it was a complete steam railroad, in active operation, with an
adequate equipment in good repair, and earning each year a
surplus of between four and five thousand dollars over fixed
charges and operating expenses.  It had been built and was
mainly conducted by residents of the section through which
it passed, and in the spring of 1903 they wished to change it
from a road operated by steam to one operated by electricity,
to extend it to Lake Placid, a distance of about forty
miles, and to make certain other changes and extensions.
With these objects in view, on the 10th of June, 1903, the
company entered into a written agreement with the defend-
ants Joseph A. Powers and Walter H. Mansfield, of which
the following is a copy :

"AGREEMENT made this 10th day of June, 1903, between
the Keeseville, Ausable Chasm and Lake Champlain Railroad
Co., hereinafter called the Company, and Joseph A. Powers
and Walter H. Mansfield, hereinafter called the Contractors,
in consideration of one dollar hereby receipted for mutually
and other good consideration.

"WITNESSETH: The Company agrees to transfer to the
Contractors and deliver the same within ten days after the
completion of the agreement hereinafter mentioned on their
part for the operation of the road by electricity seventy-five
per cent of the issued capital stock of said company, and to
at once place the same in escrow with the Keeseville National
Bank for said purpose; and agrees to deliver to said Con-
tractors all the unissued capital stock of said Company, and
agrees to appoint an executive committee of three to be named
by the said Contractors and with powers satisfactory to them.
The Company agrees to mortgage its property, franchises and
equipments by executing and filing a consolidated mortgage
in the sum of $175,000, the bonds to be issued thereunder
to be six per cent twenty-year gold bonds, with interest pay-
able semi-annually on July 1st and January 1st.  Said bonds
to be callable and payable at ten per cent premium and
accrued interest at any time.  Sufficient of said bonds to be

held in escrow to retire the present outstanding bonds of the Company and the balance of said bonds to be issued to said Contractors for the work and material hereinafter specified, as soon as practicable, and procure the necessary consents of stockholders thereto.

"The Contractors agree to reconstruct the Company's railroad into a first-class modern third rail electric railroad, to furnish an electric locomotive of sufficient capacity for the company's business and storage battery, dynamo, switchboard and appurtenances sufficient for the company's use and business; and to furnish sufficient and proper cars for the business of the Company. Said Contractors agree to purchase and deliver to the Company the Dock property at Port Kent on Lake Champlain, and to connect the Company's railroad there with by suitable tracks; also to extend the Company's railroad westerly on both sides of the Ausable River to the upper bridge in the Village of Keeseville as soon as possible.

"Said railroad when reconstructed shall at all times be operated with as good service to the Villages of Keeseville and Ausable Chasm as heretofore had and there shall be no increase of rate for freight or passengers.

"The Company is to procure an exclusive contract for traffic from and to the Ausable Chasm, from the Ausable Chasm Co. if possible.

"The Company is to procure and the Contractors pay for proper water power to operate said electric road, at a price mutually agreed upon.

"The Contractors agree to commence the said work of reconstruction at once and carry the same to completion as rapidly as possible, and both parties are to use their best endeavors to accomplish the same.

"This contract is made upon the mutual understanding that said electric railroad is to be extended through the Ausable valley to Lake Placid as soon as practicable, and work to be begun within not longer than three years."

This agreement was promptly performed by the company on its part, except in certain particulars, which were either

waived or prevented by the other parties thereto. On the other hand, when this action was commenced, about twenty months after the date of the contract, there had been a substantial and nearly absolute failure to perform on the part of Powers and Mansfield, although performance was practicable and quite within their power. While they had purchased and transferred to the company the dock property at Port Kent, they had not connected the railroad therewith by suitable tracks, which would have required the expenditure of considerable money in grading, acquiring a right of way, purchasing and laying rails and the like. Without such connection the dock property was of little use to the railroad company. While the work of transforming the steam road into an elec-. tric road and equipping it as required could easily have been done within six months from the date of the contract, in March, 1905, when this action was begun, Powers and Mansfield had done no substantial part thereof, although they had laid at intervals on the roadbed some long ties, which were equally adapted to an electric or a steam road, and they had placed on the ground, but had not erected, the poles needed to carry the electric wires and the cover to protect the third rail, together with some lumber suitable for the work, but equally useful for other purposes. They had not procured a water power to operate the road by electricity, nor extended the road to the upper bridge in the village of Keeseville on either side of the river, which would have required the construction of about one mile of road, nor had they procured the right of way for such extension or the consent of property owners or of the village authorities. Nothing had been done to extend the road to Lake Placid, which would have cost a large sum of money, but on the other hand Powers and Mansfield had repudiated that part of the agreement and had declared that they never intended to be bound by it, although they knew when they signed the contract that the other party thereto understood it as requiring such extension and that the railroad authorities would not have executed it upon any other understanding. Their omission to perform

the contract according to its terms was not owing to unforeseen circumstances, nor to any default, consent or waiver of the railroad company while under the control of the original directors.

The entire amount expended by Powers and Mansfield, their assignees and agents in doing work contemplated by the contract did not exceed $14,250.31 at the time the action was commenced. This sum includes all moneys paid out for any purpose and all that may become due on obligations incurred by them for the purpose specified. Of this amount $7,000 was expended for the purchase of the dock property, $3,796 for material bought and labor done in the work of transforming the road and the remainder for purposes which had little or nothing to do with the performance of their contract. Performance of the contract on their part, aside from the extension to Lake Placid, would have cost about $120,000. The net earnings of the road during the years 1903, 1904 and 1905 were about $4,000 a year.

While Powers and Mansfield had done but little toward performance, they had obtained possession of the treasury stock and by voting thereon and on a few other shares which they had purchased had elected their relatives and employees as directors and had thus secured absolute control of the road. Through such control they had obtained possession of the bonds issued by the road to the amount of $175,000 and to a large extent had used them for purposes other than the performance of their contract, and had transferred them to certain of the other defendants in the action who claimed to own them in good faith, but they had notice of the facts. They had also caused the railroad company to enter into an improvident contract with an electric light and power company, owned and controlled by themselves, to their own profit and to the detriment of the road.

This action was commenced on the fifth of March, 1905, by service of process upon all the defendants except one, the Powers and Mansfield Company, owned and controlled by Powers and Mansfield, which was brought in as a party

defendant by an amended complaint on the 26th of August following.   It is a representative action brought by a stockholder of the railroad company from the date of organization to rescind the contract of June 10, 1903, recover possession of the bonds and treasury stock, set aside various contracts made by Powers and Mansfield with their own instruments and agents, and so far as possible to place the company in the position it occupied when the contract was made.   The plaintiff, who owned 2,192 shares of stock when the action was commenced and 2,489 when it was tried, much thereof being pledged in escrow, tendered in his complaint restitution, either literal or by the payment of money, of all benefits received by the road down to the time of the commencement of the action, over and above those paid for out of earnings. The railroad company was made a party defendant upon the allegation that it could not protect itself because it was under the control of those hostile to its interests.   The complaint was drawn upon the theory of fraud in entering into the contract, the repudiation of a vital part and such willful and radical breaches thereof as to defeat its object.

Not long after the commencement of the action the defendants began to " electrify " the road with some energy.   The plaintiff, anticipating that a claim would be made for reimbursement in case the election to rescind shown by the commencement of the action should be sustained by the court, in August, 1905, procured an injunction restraining the active defendants from further prosecuting the work in any respect. On the fourth of November, 1905, on motion of said defendants and against the objection of the plaintiff, said injunction was vacated, and thereupon the work was resumed and continued until, as it is alleged, more than $50,000 had been expended thereon.

The referee before whom the action was tried did not find that Powers and Mansfield were guilty of fraud in entering into the contract, but decreed rescission upon the ground of repudiation and of willful, continuous and radical breaches, set aside certain contracts and transfers made by the railroad

company when under the control of Powers and Mansfield, and required the defendants to restore such property and securities of the company, including all the treasury stock and the most of the bonds, as they had in their possession, and granted other relief incidental to the decree for rescission. He required as a condition that the company should convey to Powers and Mansfield the dock property, or at their election to pay the cost thereof with interest, and to restore or account for the said sum of $14,250.31 expended before the action was brought. He directed an accounting between the railroad company and Powers and Mansfield, in which each should be credited with the amount expended and charged with the amount received to the date of suit. He provided that Powers and Mansfield and the Powers and Mansfield Company, their contractors, should be entitled to remove from the premises of the railroad company " all electrical equipment, wire, rails, batteries, dynamos, electric locomotives and cars and other property delivered by them to the railroad company since March 5th, 1905, and which can be removed without injury to the said railroad, the items of such property so to be removed ·by them to be determined by the referee on the accounting above directed and specified in the final judgment."

Upon appeal to the Appellate Division the interlocutory judgment entered upon the report of the referee was so modified, as a condition of relief, that upon the accounting the defendants should have credit for all sums reasonably expended by them " upon said road and its management up to the time of the accounting," in addition to the sums expended prior to the commencement of the action. As a further condition of relief the plaintiff or the railroad company was required to pay the amount found due to the defendants or any of· them upon the accounting, or to give a bond with two or more sureties, justifying in the sum of $160,000, " conditioned for the payment of the amount found due * * * to the amount of $80,000." The plaintiff was required to elect within thirty days after notice of the order of the Appellate

Division whether he would comply with the conditions upon which relief was given, "and that if he does not so elect within that time to comply with said conditions the complaint is dismissed without costs."

The plaintiff moved before the Appellate Division for leave to appeal from so much of the order of affirmance and the interlocutory judgment entered thereon "as conditioned the relief given to plaintiff on the payment, or provision for payment, of expenditures made after action was brought and imposing the further condition that plaintiff within thirty days elect whether he would accept the condition imposed and on his failure to do so the complaint be dismissed." The defendants asked that if the application of the plaintiff should be granted certain questions suggested in their behalf be certified, upon the ground that the one presented by the plaintiff would not determine the entire controversy and would not decide the questions which the defendants wished to have reviewed. The court refused to certify any questions except such as related to the plaintiff's appeal unless the defendants should join in the application to appeal or apply independently to be allowed to appeal themselves. After excepting to this decision the defendants notified the court that they joined in the application of the plaintiff for leave to appeal and asked to have certain questions specified by them certified to the Court of Appeals. The plaintiff consented in open court that defendants' application might be entertained and granted. Thereupon the court gave both parties leave to appeal and on the application of the plaintiff certified the following question: "Was the relief properly conditioned on payment, or provision for payment, of the expenditures made after action was brought?" By an independent clause of the order leave was given to the defendants to appeal and the following questions were certified in their behalf: "1. Was the judgment authorized by the evidence and findings of the referee? 2. Is the judgment *secundum allegata?* 3. Did the reception in evidence of conversations between Powers and Mansfield, or either of

them, and the officers and directors of the railroad company before and at the time of making the contract as detailed in folios 2712, 3130, 3133, 3140, 3898, 3904, 3916, 4102, 4105 and 5556, over the objections and exceptions of the defendants Powers and Mansfield, the Powers and Mansfield Company and Albert E. Powers, constitute reversible error?"

Both parties appealed, the plaintiff from so much of the interlocutory judgment as related to the expenditures made by the defendants after the commencement of the action and the condition requiring the plaintiff to elect within thirty days from service of the judgment and notice of entry and dismissing the complaint in case he failed to make such election.

The defendants Joseph A. Powers, Walter H. Mansfield, The Powers and Mansfield Company and Albert E. Powers appealed from the order and interlocutory judgment and from each and every part thereof.

*Thomas F. Conway, Frank E. Smith* and *T. B. Cotter* for plaintiff, appellant and respondent. The condition imposed by the Appellate Division — that plaintiff or the railroad company must pay the expenditures made by the defendants after the commencement of the action, or his complaint be dismissed, was unwarranted, and, therefore, the following question certified by it — " Was the relief properly conditioned on payment, or provision for payment, of the expenditures made after action was brought?" — should be answered in the negative. (*R. H. & T. M. Co.* v. *A. D. F. & T. Co.*, 195 N. Y. 54; *Gillespie* v. *Moon*, 2 Johns. Ch. 585.) The modification of the judgment made by the Appellate Division in so far as it compels the plaintiff to buy from the defendants property purchased by them, after this action was begun, and to pay therefor the cost of such property to the defendants, and also to reimburse defendants for all moneys expended on the railroad in performance of the contract, after the action was begun to cancel it, was erroneous and beyond the power of the Supreme Court. (*Bomeisler* v.

*Forster,* 154 N. Y. 229 ; *Thomas* v. *Evans,* 105 N. Y. 601 ; *Putman* v. *Ritchie,* 6 Paige, 390 ; *Mickles* v. *Dillaye,* 17 N. Y. 80 ; *Green* v. *Biddle,* 8 Wheat. 79 ; *Gregory* v. *Thomas,* 20 Wend. 19 ; Sedgwick on Damages [8th ed.], § 915 ; *Woodhull* v. *Rosenthal,* 61 N. Y. 382 ; *Wood* v. *Wood,* 83 N. Y. 575 ; *Moore* v. *Cable,* 1 Johns. Ch. 387 ; *Gillespie* v. *Moon,* 2 Johns. Ch. 585 ; *Spears* v. *Mayor, etc.,* 87 N. Y. 359 ; *Comstock* v. *Johnson,* 46 N. Y. 615.) The modification is erroneous in that it allows the defendants the amount expended by them upon the railroad, including the cost of the electrical equipment. (Sedgwick on Damages [8th ed.], § 917 ; *Woodhull* v. *Rosenthal,* 61 N. Y. 382.) The facts found justify a rescission of the contract. ( *Van Allen* v. *N. Y. & N. E. R. R. Co.,* 144 N. Y. 174 ; *Graves* v. *White,* 87 N. Y. 463 ; *Hubbell* v. *Ins. Co.,* 89 N. Y. 41 ; *L. S. & M. S. R. R. Co.* v. *Richard,* 152 Ill. 59 ; *Leopold* v. *Salkey,* 89 Ill. 412 ; *Ballance* v. *Vanuxem,* 191 Ill. 319 ; *Burtis* v. *Thompson,* 42 N. Y. 246 ; *Howard* v. *Daly,* 61 N. Y. 362 ; *Ferris* v. *Spooner,* 102 N. Y. 10 ; *U. Ins. Co.* v. *C. T. Co.,* 157 N. Y. 633.) The failure to transform the existing road from Keeseville to Port Kent into an electric road and extend it to the dock was such a breach of the contract as justifies its rescission. (*S. R. P. Co.* v. *S. C. L. Co.,* 42 Misc. Rep. 102.) The acts done by defendants since the beginning of this action do not change the rights of the parties or deprive plaintiff of the right of rescission or cancellation if that right existed when the suit was begun. (Story's Eq. Pl. § 903 ; Code Civ. Pro. § 544 ; *Ward* v. *Boyce,* 152 N. Y. 191 ; *Fox* v. *Davidson,* 36 App. Div. 159 ; *T. Assn.* v. *Eisner,* 70 App. Div. 172 ; *L. S. & M. S. R. R. Co.* v. *Richards,* 152 Ill. 59 ; *Stevenson* v. *Marble,* 84 Fed. Rep. 23 ; *M. E. R. R. Co.* v. *M. R. Co.,* 11 Daly, 373 ; *Schmidt* v. *Reed,* 132 N. Y. 108 ; *Dawes* v. *Wood,* L. R. [29 Ch. Div.] 626 ; *Starr* v. *B. Society,* L. R. [42 Ch. Div.] 375 ; *Bellamy* v. *Debenham,* L. R. [1 Ch. Div. 1891] 412.) The action was properly brought in equity for a rescission. There was no adequate remedy at law. (*People* v. *E. L.*

*Ass. Society*, 124 App. Div. 714–734; *Converse* v. *U. S. M. Co.*, 185 Mass. 422; *Gould* v. *C. C. Nat. Bank*, 86 N. Y. 75; *F. L. & T. Co.* v. *Galesburg*, 133 U. S. 156; *Marvin* v. *Brooks*, 94 N. Y. 71.) The judgment appealed from grants only such relief as is asked for in the complaint and is in accordance with the facts alleged therein and proved thereunder. Therefore, the following question certified on behalf of the defendants, namely, "Is the judgment *secundum allegata?*" should be answered in the affirmative. (*Connaughty* v. *Nicholas*, 42 N. Y. 83; Code Civ. Pro. § 488; *R. H. & I. M. Co.* v. *U. D. F. & T. Co.*, 195 N. Y. 54.) The third question certified on defendants' appeal, as to competency of certain evidence specified, should be answered in the negative. (*Gillespie* v. *Moon*, 2 Johns. Ch. 585; Bispham's Pr. of Equity, § 258; *Foote* v. *Beecher*, 12 Hun, 374; *Forrest* v. *Forrest*, 25 N. Y. 501; *Clapp* v. *Fullerton*, 34 N. Y. 190; *Post* v. *B. H. R. R. Co.*, 195 N. Y. 62.)

*D-Cady Herrick, Thomas O'Connor* and *Francis A. Martin* for defendants, respondents and appellants. The first question certified to this court upon the appeal of the defendants is not a proper question to be certified, and does not present a question that can be passed upon by this court. (*Putnam* v. *L. S. D. Co.*, 191 N. Y. 166; *Duclos* v. *Kelly*, 197 N. Y. 76; *Sweet* v. *Henry*, 175 N. Y. 268; *Reed* v. *McCord*, 160 N. Y. 330.) The judgment does not follow the allegations of the complaint. (*People* v. *E. L. A. Society*, 124 App. Div. 714; *Fox* v. *Fitzpatrick*, 190 N. Y. 259; *C. B. Co.* v. *Howlett*, 169 N. Y. 293; *Gordon* v. *E. & K. R. R. Co.*, 195 N. Y. 137; *R. E. Bank* v. *Eames*, 1 Keyes, 592; *Truesdell* v. *Sarles*, 104 N. Y. 164; *Reed* v. *McConnell*, 133 N. Y. 425; *Nichols* v. *Pinner*, 18 N. Y. 295; *Nichols* v. *Michael*, 23 N. Y. 264; *Farrington* v. *Bullard*, 40 Barb. 512; *Kley* v. *Healy*, 127 N. Y. 555.) A judgment is not *secundum allegata* that can only be sustained upon the ground that from the findings of the trial court the plaintiff is entitled

to relief upon some other ground or for some other reason than that stated in the complaint. (*Cassidy* v. *Uhlmann*, 170 N. Y. 537.) The judgment ought not to be sustained, because it is rendered upon grounds not only varying from but entirely inconsistent with the averments in the complaint. (*Smith* v. *Smith*, 4 App. Div. 230; *Truesdell* v. *Bourke*, 145 N. Y. 617; *Barnes* v. *Quigley*, 59 N. Y. 267; *Freeman* v. *Grant*, 132 N. Y. 129; *De Graw* v. *Elmore*, 50 N. Y. 3.) With the allegations of fraud stricken from the complaint, the judgment is not *secundum allegata*, in that in that event the allegations of the complaint and the findings of the referee do not warrant the judgment rendered. (*Johnson* v. *Murphey*, 60 Ala. 288; *Stephens* v. *Cushing*, 1 N. H. 17; *Dubois* v. *Dubois*, 176 Penn. St. 430; *Michel* v. *Halheimer*, 16 N. Y. Supp. 489; *Moores* v. *Townsend*, 102 N. Y. 387.) The relief was properly conditioned on payment, or provision for payment, of the expenditures made after action was brought. (*R. H. & T. M. Co.* v. *U. D. F. & T. Co.*, 195 N. Y. 54; *Allerton* v. *Allerton* 30 N. Y. 670: *Davis* v. *R. R. Co.*, 192 N. Y. 128.)

VANN, J. The defendants ask us to settle the practice relating to the certification of appeals and to hold that when an application is made for leave to appeal and the Appellate Division certifies questions to be passed upon by the Court of Appeals, it should certify such questions as will finally determine the litigation, no matter by whom they were suggested.

We cannot control the right or form of certification, as the power to certify is conferred upon the Appellate Division by the Constitution, and it is the sole judge of the proper method of exercising that power, although we can decline to answer the questions certified under certain circumstances, as we frequently do. An appeal by permission is not a right but a privilege. If the questions certified are not satisfactory to the party who desires to appeal, he need not avail himself of the privilege extended, but in a case like this can wait until

final judgment is entered, and by his appeal from that judgment, with notice of an intention to review the interlocutory judgment, can bring up every question in the case. If the defendants were of the opinion that questions were not certified which they deemed essential, they should not have appealed as a matter of privilege, but should have waited until they could have appealed as matter of right. They had the option to appeal or not as they saw fit under the leave granted by the Appellate Division. By availing themselves of the option they waived, not temporarily but finally, the right to any review of the interlocutory judgment, except such as can be had by virtue of the questions certified. That judgment cannot be reviewed in sections, some questions on appeal by permission and others on appeal as matter of right, when both appeals are brought by the same party. Such a course would lead to confusion and greatly increase the labor of review. The appeal from the final judgment, therefore, if one is taken, either with or without notice of an intention to review the interlocutory judgment, will bring up no question relating to the latter, but only such as may arise upon the accounting. These are our views upon the subject, and while the question may not be raised in due form, owing to the request of the defendants that we should settle the practice, we have thought best to express them at this time.

The first question certified in behalf of the defendants is as follows: "Was the judgment authorized by the evidence and findings of the referee?"

The question is not whether the evidence supports the findings or the findings support the judgment, but whether the evidence and findings together support the judgment. We cannot find facts, but where the evidence is undisputed we may presume that certain facts were found although not expressed. The rule is that when a fact is not expressly found and no request is made upon the subject, an appellate court will presume in support of the judgment but not to reverse it, that such fact was found provided it was conclusively proved and tends to support the express findings. Only to

this extent can findings be implied and, hence, we construe the first question as asking whether the judgment is authorized by the express findings and by those implied in support of the judgment according to the rule already stated. By reading the question with this meaning, and not otherwise, can we answer it effectively.

The findings prepared for the judgment roll are but few in number for so complicated an action, but after they were signed and filed, pursuant to an order of the Special Term inadvertently made but not appealed from, many proposed findings, consisting mainly of evidential facts passed upon by the referee, were added and these additional findings cover about one hundred pages of the appeal book. He rendered judgment rescinding the contract on the theory that it had been continuously violated in all essential particulars by Powers and Mansfield and that they had repudiated from the outset a binding part thereof. He had power to decree rescission on either of these grounds without finding fraud. While the complaint alleged both fraud in making the contract and a continuous breach and repudiation thereof as the grounds upon which it should be rescinded, the referee rejected the allegations of fraud and proceeded to judgment upon the allegations of breach and repudiation. Rescission was the object of the action, and the plaintiff had the right to allege as many grounds for rescission as he saw fit. He could allege in the same complaint fraud in entering into the contract as one ground for rescission, the continuous and substantial breach of the contract as another ground, and the repudiation of a material stipulation as a third ground. In other words, he could allege as many grounds as he thought he could prove, and the defendants take nothing from the fact that he failed as to fraud when he succeeded upon the other grounds. It is not essential that the repudiation as to the extension of the road to Lake Placid should be a valid ground of rescission, as held below with the support of a strong argument by the presiding justice, provided the constant and substantial breaches in other respects were sufficient to authorize the judgment

rendered. The referee found, as separate and distinct grounds upon which rescission should be predicated, the failure to transform the steam road into an electric road, to connect it with the dock on Lake Champlain and to extend it to the upper bridge in Keeseville.

We think the facts found expressly, without aid from implication, support the judgment, and that the evidence supports the findings. There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof and for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient. If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation. In this case the failure to perform was of a most substantial character and pervaded almost the entire contract. The road was not transformed into an electric road, nor extended to Keeseville, nor connected with the dock at Port Kent. It was still a steam road and for all practical purposes in the same condition as before the contract was made, but it had been incumbered for nearly three times the amount of the original issue of stock and bonds and the proceeds converted to their own use by Powers and Mansfield. There was such a failure to perform the substance of the contract as to defeat its purpose in nearly every essential respect. Even if an action at law were possible to a

plaintiff suing in a representative capacity, it is obvious that the damages for such breaches of such a contract could not be estimated with precision.   Whether the road would make or lose by the transformation and extension, and what the profits would be, if any, depended on so many unknown circumstances that the subject necessarily rested on conjecture and speculation.   The railroad company and the plaintiff waited long for performance, but after more than a reasonable time had elapsed an election to rescind was made.   After that nothing was done by way of negotiations or otherwise to keep the matter open. The plaintiff assuming to act in a representative capacity elected to rescind and stood by his election and what the defendants have done since is immaterial except as equity may require such restitution of subsequent additions or improvements as can be made without injury to the plaintiff or the company.   Tender of restitution in the complaint is sufficient in an action in equity brought for a rescission.   ( *Vail* v. *Reynolds*, 118 N. Y. 297.)   There was no remedy at law open to the plaintiff, for a representative action, brought to compel a corporation to do something which it ought to do but cannot do because it is under the control of the other defendants, is necessarily an equitable action.   The plaintiff had no standing except in equity, for he could not represent other stockholders or the railroad company in any other forum.   An express finding that he had no remedy at law was unnecessary, for that is a legal conclusion flowing from the nature of the action.

The first question certified in behalf of the defendants, as already construed, should be answered in the affirmative.

The second question presented by the defendants' appeal, "Is the judgment *secundum allegata*," requires brief attention.   While every fact found is alleged, it cannot be said that the judgment accords with all the allegations of the complaint, for it was not according to the allegation of fraud.   As already appears, however, it is in accord with the allegation of repeated and fundamental breaches of the contract sought to be rescinded.   As we have shown, this is sufficient to

authorize a judgment of rescission, which, although demanded upon various grounds, must stand if based on but one adequate ground. This question, therefore, should also be answered in the affirmative.

The defendants' third question relates to conversations between Powers and Mansfield and the officers and directors of the railroad company before and at the time of making the contract. It is claimed that these conversations were incompetent, because they were merged in the written contract, according to the familiar rule. The plaintiff, however, had alleged fraud as a ground of rescission, and he had a right to prove the existence of fraud if he could. On that issue the contemporary and preceding conversations, both those involving representations and those tending to show that the directors relied upon them, were competent, and although the plaintiff did not succeed on the issue of fraud, still the receipt of that evidence was not error. (*Thomas* v. *Scutt,* 127 N. Y. 133, 137.) Moreover, the evidence could not have injured the defendants, because the judgment did not change or modify the contract in any way. It acted on the contract as made and rescinded it for causes occurring after it was made. The third question, therefore, should be answered in the negative.

The question certified in behalf of the plaintiff is as follows: " Was the relief properly conditioned on payment or provision for payment of the expenditures made after the action was brought ? "

By the original judgment the plaintiff was required to pay back all that had been expended prior to the commencement of the action and to restore or permit the removal of all property delivered to the railroad company after that date, which could be removed without injury to the plant. This left the parties in *statu quo* as far as possible. By the modified judgment he was required to pay in addition to the amount expended before the commencement of the action all that was expended thereafter and down to the date of judgment. This placed a burden on the plaintiff that the law does not require.

The right to rescind depends on the situation at the time the action is commenced, and if the right exists then, no subsequent act of the party in default without the consent of the plaintiff can defeat it.   When rescission is decreed, the judgment of rescission relates back to the commencement of the action and the rights of the parties depend on the facts as they then existed.   Anything done by the party in default toward performance after that date is at his peril, for, as subsequently adjudged, there was then no contract to perform and nothing done could be attributed to the contract. If complete restitution of benefits conferred by partial performance after suit was brought cannot be had, the party in default has only himself to blame, for acting with full knowledge he could not deprive the plaintiff of what he was lawfully entitled to.   Whatever the defendants expended after the commencement of the action was expended with notice that the plaintiff had elected to rescind the contract and had brought an action to effect rescission.   With this notice they ran the risk of having any expenditures made after that date restored to them.   As the plaintiff comes into a court of equity, however, he should do equity and it is equitable that, as a condition of relief under the circumstances of this case, he should pay for the actual · benefits received by the road as a steam road, but only to the extent that they increase the value of the road as a steam road.   The company should not be allowed to retain reasonable additions and improvements costing but little and of permanent value to it as a steam road without paying, not what they cost, but what they are worth to it as a steam road.   The amount cannot be large and may be so trifling that it might be overlooked, but exact justice requires it to be paid. Removal of all that could be removed without injury to the property was allowed by the referee, and whatever cannot be removed should be paid for to the extent that it is beneficial to the road as a steam road, such as it was when the contract in question was made and no farther.

The order of the Appellate Division should be reversed

and the interlocutory judgment entered upon the report of the referee modified so as to require as a further condition of relief, in addition to those specified by the referee, that the plaintiff or the railroad company should account for the value of such reasonable improvements to its realty, if any, as are of permanent benefit to the road as a steam road, and which cannot be removed without injury to the realty, and that as so modified the interlocutory judgment be affirmed, with costs of this appeal in favor of the plaintiff and against the defendants Joseph A. Powers and Walter H. Mansfield, and questions answered as stated in this opinion.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.