CHATEAUGAY LAKE ESTATES, INC., Plaintiff, *v.* LEANDER A. BOUYEA, Defendant.

Supreme Court, Special Term, Clinton County, February 25, 1949.

*Eugene J. Blumberg* for plaintiff.

*Harry P. Kehoe* for defendant.

RYAN, J. On July 3, 1946, the defendant Leander A. Bouyea as grantor entered into a written contract for the sale of the real estate which is the subject of this lawsuit, with the grantees, James Nagel personally and as attorney in fact for Clarence L. Elliott and P. Maddalino. Thereafter Maddalino assigned his rights to his associates, and on August 3, 1946, the defendant Bouyea executed a deed of these premises to the plaintiff, Chateaugay Lake Estates, Inc., the designee of Elliott and Nagel. At the time of the trial Elliot and the estate of James Nagel were the owners of all of the stock of Chateaugay Lake Estates, Inc.

Thereafter and in February, 1948, the plaintiff instituted this action to set aside the deed and to rescind the contract, alleging the defendant fraudulently induced the plaintiff and its assignors to enter into the contract of sale and the subsequent conveyance. As part consideration for the property involved, the plaintiff executed to the defendant a purchase money mortgage in the amount of $30,000.

The plaintiff bases its claim of misrepresentation on three instruments that appear in the chain of title. The first, is a mortgage dated May 1, 1908, executed by the Delaware & Hudson Company, the then owners of the property, to the Farmers Loan & Trust Company in the sum of $50,000,000; the second, is a lease executed in 1875, and the third, an extension of this lease executed in 1881. All three instruments were included in the abstract of title which, the plaintiff maintains, it did not have access to until at or after the closing of title, and that it had no previous knowledge of either the mortgage to the Farmers Loan & Trust Company or the lease and its renewal agreement.

On the basis of these alleged defects in the title to the premises of which it claims the plaintiff corporation or its assignors had no previous knowledge, it seeks to rescind the entire transaction; asking for the return of the down payment; the return of payments made by it in connection with maintenance of the property since it has held title; a discharge of the bond and mortgage; an offer to tender a reconveyance of the premises to the defendant. The action though alleging fraud on the part of the defendant, is an action in rescission.

"There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof and

for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient.'' (*Callanan* v. *Keeseville, Ausable Chasm & Lake Champlain R. R. Co.*, 199 N. Y. 268, 284.)

That a failure of consideration is not an issue in this case is beyond any question. The plaintiff seeks in its complaint to make out a case of fraud, but at the close of the plaintiff's evidence was content to rest on the theory of rescission, and in effect abandoning fraud as a primary basis for its action. Nor is inability to perform or repudiation alleged anywhere in the complaint. The general rule set forth in *Callanan* (*supra*), limits the plaintiff to '' such a breach as substantially defeats its purpose ''. Nor can the breach be '' technical '' or '' casual '' but to the contrary it must be a breach '' so material and * * * so substantial,'' '' if not willful '' as '' to strongly tend to defeat the object of the parties in making the contract.''

The issue whether the title to this property is marketable, is not before the court for determination, if it appears from the evidence that any alleged defects, which may exist, were fully known to the plaintiff or its assignors at and before the closing of title.

Documentary evidence received during the course of the trial demonstrates beyond dispute that the purchaser or its assignors had knowledge of the lease and its renewal agreement at the time it entered into the contract of sale some two months before the closing of title. Specific reference is made to each document by liber and page number in the county clerk's office, and title is made '' subject to reservations, easements, covenants and restrictions contained therein,'' and this identical clause is repeated in not only the deed of conveyance but in the mortgage as well.

Nor were the purchasers limited to this source of information for advice in the matter. The fact that the abstract of title was in the possession of some of the assignors and their attorney for some time prior to the closing, is admitted by the plaintiff's witness Maddalino. It is not disputed at any point that the abstract of title contained both the mortgage and the leases of which the plaintiff now complains. There was no breach so sub-

stantial or fundamental as to defeat the object of the parties in making the contract in the case before the court.

The evidence produced on the trial of this action, in the judgment of the court, conclusively established that the plaintiff and its assignors not only had full knowledge of the existence of the mortgage and the leases, which are now complained of, but that considerable discussion of their effect on the title was indulged in by all parties interested before the closing of title. Such a situation clearly distinguishes this case from *Pryor* v. *City of Buffalo* (197 N. Y. 123), cited in counsel's brief. In the *Pryor* case, Judge BARTLETT writing for the court, stated (p. 134) : " It further appears that the search furnished by the city of Buffalo to the plaintiff, April 10th, 1906, failed to disclose any acts of the legislature or other facts tending to advise them that the New York Central and Hudson River Railroad Company had any legal right in and upon the premises in question."

The court having reached this determination on the facts from the evidence presented in this case, it necessarily follows that judgment in favor of the defendant dismissing the complaint in the action with costs is granted.