Sabby Healthcare Master Fund Ltd. v Microbot Med. Inc. (2020 NY Slip Op 01129)





Sabby Healthcare Master Fund Ltd. v Microbot Med. Inc.


2020 NY Slip Op 01129


Decided on February 18, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 18, 2020

Acosta, P.J., Kapnick, Moulton, González, JJ.


654581/17 11054A 11054

[*1] Sabby Healthcare Master Fund Ltd., et al., Plaintiffs-Respondents,
v
Microbot Medical Inc., Defendant-Appellant.


Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York (John F. Sylvia of counsel), for appellant.
Olshan Frome Wolosky LLP, New York (Peter M. Sartorius of counsel), for respondents.



Judgment, Supreme Court, New York County (Barry R. Ostrager, J.), entered March 11, 2019, which, upon a nonjury trial, granted judgment to plaintiffs on the complaint's first cause of action seeking rescission of a securities purchase agreement (the SPA) between the parties, dated June 5, 2017, and directed defendant to remit to plaintiffs $3,375,000 upon delivery by plaintiffs of 83,333 shares of defendant's common stock, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered February 28, 2019, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The trial record indicates that plaintiffs, two affiliated private investment funds, rapidly negotiated the SPA essentially over the course of a single day, Sunday, June 4, 2017. The material terms called for plaintiffs to purchase 1,250,000 shares of defendant's common stock (now equivalent to 83,333 shares, subsequent to a 15-to-1 reverse stock split), at $2.70 per share, for a total of $3,375,000. Defendant's disclosures indicated that one of its stockholders, Alpha Capital Anstalt, held a dominant position in the company, holding preferred shares which were convertible to about 30% of total common stock. Alpha also had a very low basis in its shares of defendant's stock of no more than 64 cents per share (which had closed at $3.81 on June 2, 2017, the last trading day before the transaction at issue). Alpha's low basis gave it a strong incentive to monetize its shares, particularly since volume and price had spiked that week in response to a favorable press release. Defendant's disclosures also indicated that Alpha was an affiliate.
Plaintiffs' CEO thus testified that Alpha's status as an affiliate was not merely "material," it was "everything." As an affiliate, Alpha's ability to sell its shares would be severely restricted under SEC rules. If Alpha were not an affiliate, then it could rapidly sell shares, adversely impacting the stock price. The trial court credited the CEO's testimony, which was consistent with the documentary evidence, in the form of the disclosures and emails exchanged between plaintiffs and defendant's agent (see PSKW, LLC v McKesson Specialty Ariz., Inc., 159 AD3d 599 [1st Dept 2018]; Hardwick v State of New York, 90 AD3d 540 [1st Dept 2011]). The trial court, therefore, properly found defendant's misrepresentation that Alpha was an affiliate to be "material" to the transaction (see Helprin v Harcourt, Inc., 277 F Supp 2d 327, 339 [SD NY 2003), for purposes of establishing plaintiffs' claim for rescission (see Babylon Assocs. v County of Suffolk, 101 AD2d 207, 215 [2d Dept 1984]; Callanan v Keeseville, Ausable Chasm & Lake Champlain R.R. Co., 199 NY 268, 284 [1910]).
It is true that the trial record also indicates that Alpha was subject to a "blocker," preventing it from holding more than 9.9% of defendant's outstanding common stock. This does not render Alpha's affiliate status immaterial, however; if Alpha were not an affiliate, the sale of shares amounting to 9.9% of the company's shares would obviously have a substantial downward impact on the stock price.
Defendant's misrepresentation was also substantial in that it "strongly tend[ed] to defeat the object of the parties in making the contract" (Callanan, 199 NY at 284). Plaintiffs' CEO testified that their goal in entering into the transaction was to arbitrage the difference between their discounted $2.70 purchase price and the last closing price of $3.81 per share. If defendant's largest shareholder, which had also acquired its shares for less than a fifth of the latest price, had the ability (and the incentive) to rapidly monetize its position, this would pose a significant potential for impacting plaintiffs' plans. We accordingly find that the trial court properly granted rescission of the contract.
Nor do plaintiffs have any adequate remedy at law. Indeed, a "defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud" (Big Apple Car, Inc. v City of New York, 204 AD2d 109, 110-111 [1st Dept 1994]; accord J.P. Morgan Sec. Inc. v Ader, 127 AD3d 506, 507-508 [1st Dept 2015]). Plaintiffs here acted diligently, and elected to demand rescission immediately upon discovering the misrepresentation, which happened less than a week after closing (see Clearview Concrete Prods. Corp. v S. Charles Gherardi Inc., 88 AD2d 461, 466-467 [2d Dept 1982]). Defendant, acting in what can fairly be characterized on the trial record as bad faith, refused.
Plaintiffs are further entitled to affirmance on the separate and independent ground of fraudulent inducement (see GoSmile, Inc. v Levine, 81 AD3d 77 [1st Dept 2010], lv dismissed 17 NY3d 782 [2011]). Defendant falsely represented to plaintiffs that Alpha was an affiliate. Plaintiffs reasonably relied on this representation (which they specifically questioned both by emails and in phone conversations with defendant's agent). While no showing of pecuniary loss is needed to support a claim for fraudulent inducement based on rescission, plaintiffs in fact suffered a loss, as the stock price dropped on the day of the transaction and has never recovered (see Board of Mgrs. of the Soundings Condominium v Foerster, 138 AD3d 160, 164 [1st Dept 2016]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 18, 2020
CLERK