LORD CONSTRUCTION COMPANY, Appellant, *v.* EDISON PORTLAND CEMENT COMPANY, Respondent.

**Waiver — estoppel — question of fact — contract of sale — waiver a voluntary giving up of known right — estoppel may be based thereon — duty to speak — mere silence not enough to fix liability — action for breach of contract of sale — when waiver of right to terminate deliveries at certain date question of fact.**

1. Waiver is the voluntary giving up of a known right. It may be established by conduct. When established, an estoppel may be based thereon which bars the subsequent assertion of such right. It is an incident of performance and relieves against forfeiture.

2. A waiver, not express, found in the acts, conduct or language of a party, is rarely established as a matter of law rather than as a matter of fact.

3. No duty to speak arises from the mere fact that a man is aware that another may take an action prejudicial to himself if the real facts are not disclosed. Mere silence is not enough to fix liability. It

must be a deceptive silence accompanied by an intention to defraud, which amounts to a positive beguilement.

4. Where, in an action to recover for breach of a written contract for the sale of cement, providing among other things that the defendant " shall not be obliged, except at its option, to make deliveries " after a fixed date, it appears that from letters passing between the parties prior to said date a waiver on the part of defendant of its right to refuse deliveries after the time mentioned might be deduced, but, on the other hand, the letters are susceptible of a construction that the contract was not modified in that respect and that defendant retained its option to make deliveries after the date in question, or not, as it saw fit, the deductions of fact are for a jury to make.

*Lord Construction Co.* v. *Edison P. C. Co.*, 198 App. Div. 584, reversed.

(Argued December 6, 1922; decided January 9, 1923.)

Appeal from a judgment, entered December 15, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department, sustaining defendant's exceptions, ordered to be heard in the first instance by the Appellate Division, and directing judgment in its favor upon its counterclaim.

*Albert Stickney* for appellant. The defendant waived its right to refuse deliveries of cement after December 31, 1917. (*Kiernan* v. *D. C. Mut. Ins. Co.*, 150 N. Y. 190; *Clark* v. *West*, 193 N. Y. 349; *Roby* v. *Ins. Co.*, 120 N. Y. 510; *Jennings* v. *Grand. Trunk R. R. Co.*, 52 Hun, 227; 127 N. Y. 438.) The defendant is estopped from claiming that it had the right to refuse further deliveries after the plaintiff in reliance upon its acceptance of the orders and schedule had refrained from taking delivery of its requirements, prior to December thirty-first. (*Underwood* v. *Farmers J. S. Ins. Co.*, 57 N. Y. 500; *Toplitz* v. *Bauer*, 161 N. Y. 325; *Feinberg* v. *Allen*, 208 N. Y. 215; *White* v. *Hoyt*, 73 N. Y. 505; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Nellis* v. *Western Life Ind. Co.*,

207 N. Y. 320; *Broadway Realty Co.* v. *Lawyers Title Ins. Co.*, 226 N. Y. 335.)

*Martin Conboy, Allen S. Wrenn* and *Edwin N. Moore* for respondent. The judgment appealed from was proper and should be affirmed inasmuch as there was no evidence before the court upon which a waiver by the defendant of the December 31, 1917, cause could be predicated. (*Hull C. & C. Co.* v. *Empire Coal Co.*, 113 Fed. Rep. 256.)

POUND, J. The action is to recover damages for breach of a written contract dated May 4, 1916, for the sale of cement. The defense was a denial of the breach. Defendant also counterclaimed for an unpaid balance due for the purchase price of cement delivered under the contract. The trial court directed a verdict for the plaintiff and directed that defendant's exceptions be heard in the first instance by the Appellate Division under the provisions of the Code of Civil Procedure (§ 1000). The Appellate Division sustained the exceptions and ordered judgment for the defendant.

The contract provided for the delivery of approximately 60,000 barrels of cement alongside dock Coney Island, N. Y., in lots of not less than 500 barrels for the performance of plaintiff's contract with the public service commission to construct the Coney Island subway terminals. The contract then reads: " Time of delivery during life of job estimated to be completed by December 31st, 1917. The Purchaser shall give the Cement Company shipping instructions, in writing, a reasonable time before shipments are to be made; the Cement Company shall not be obliged, except at its option, to make deliveries after December 31st, 1917."

Up to October 27th, 1917, less than 20,000 barrels of cement had been delivered under the contract. Upon October 27th the plaintiff gave an order for 15,000

barrels of cement to be delivered, 1,000 barrels every two days. Upon October 31st a further order was given for 13,800 barrels to be delivered, 1,000 barrels every two days " when previous orders are filled." Under the contract and these orders the defendant was required to deliver 1,000 barrels every two days until 28,800 barrels had been delivered, which was estimated would be the amount of cement required to complete the job. Deliveries according to this order might be completed before December 31st. The defendant set aside the amount of cement required to fill these orders. Upon November 24th, 1917, the plaintiff wrote to the defendant as follows: " With reference to our cement delivery for Coney Island, we find that on account of shortage of stone and gravel we are unable to use the cement as fast as our request sent to you would justify, and, therefore, would like to have you hold up for the time being to the extent that our maximum requirements will be 1,000 bags per day. We appreciate very much the extra effort that you made to get cement to us and we trust that the change mentioned above will not inconvenience you."

In response to this letter, and upon December 3d, the defendant wrote to the plaintiff: " In accordance with yours of November 24th, we have reduced shipping schedule on contract for the Coney Island Terminal to approximately 250 barrels, or 1,000 sacks daily." Four bags make one barrel of cement. A thousand bags a day would be equal to 250 barrels.

The defendant thereafter shipped cement at various times before December 31st, and made four shipments thereafter, but upon January 18th it refused to make further shipments on the ground that under the contract it was not required to ship any cement after December 31st, 1917, except as it should elect so to do. Meanwhile the market price of cement had risen from $1.12 per barrel, the contract price, to $2.75 a barrel.

Plaintiff's evidence goes to establish that it was misled by the conduct of defendant in changing its shipping instructions as requested and that it would have taken all the cement required if it had known that deliveries were to be stopped on December 31st. It also goes to establish that defendant intentionally kept silent and withheld any warning that it would refuse deliveries after December 31st until after that date.

The contention of the plaintiff is, and the ruling of the trial court was, that, as matter of law, when defendant accepted the orders of October 27th and October 31st, and thereafter at plaintiff's request, by its letter of December 3d, reduced its shipping schedule to approximately 250 barrels daily, without notifying plaintiff that it would not continue deliveries after December 31st, the necessary effect of its silence was to lull plaintiff into the secure belief that it would receive the full amount of its order although the period of delivery extended beyond December 31st, and that it could not thereafter exercise its option to withhold deliveries after that date.

The court below held that the defendant had the unqualified right to avail itself of the time limit placed in the contract and to refuse to make deliveries after December 31st, and that its conduct revealed no contrary intention on its part.

The question is whether in law or in fact the defendant's conduct was deceptive and beguiling and whether plaintiff was thereby allowed to believe and justified in believing that its orders would be filled. Waiver is the voluntary giving up of a known right. It may be established by conduct. When established, an estoppel·may be based thereon which bars the subsequent assertion of such right. It is an incident of performance and relieves against forfeiture. (*Clark* v. *West*, 193 N. Y. 349.) " A waiver, not express, found in the acts, conduct or

language of a party, is rarely established as a matter of law rather than as a matter of fact." (*Alsens A. P. C. Works* v. *Degnon Cont. Co.*, 222 N. Y. 34, 37.) Did defendant's silence indicate an intention to relinquish its right to withhold delivery, inconsistent with the position afterwards assumed by it? "No duty to speak arises from the mere fact that a man is aware that another may take an action prejudicial to himself if the real facts are not disclosed." Mere silence on defendant's part is not enough to fix its liability. It must be "a deceptive silence accompanied by an intention to defraud, which amounts to a positive beguilement." (*Wiser* v. *Lawler*, 189 U. S. 260, 271; *Kiernan* v. *Dutchess Co. Mut. Ins. Co.*, 150 N. Y. 190, 194; *Eltinge* v. *Santos*, 171 Cal. 278.)

The question is, therefore, as to the intent with which the parties acted. Was it the purpose and intent of defendant to deceive? Was the natural result of its conduct to lead plaintiff to act to its disadvantage? The language of the contract is plain. The option to refuse deliveries after December 31st was to be exercised only after that date. Defendant had until that date to decide what action to take. If plaintiff's letter of November 24th was in substance and meaning this: "You have accepted our order for 28,800 barrels of cement. We need the cement to complete the job, but we are being delayed in our work and want the order filled, for the present, only at the rate of 250 barrels a day. That will obviously continue the period of delivery long past December 31st unless we change our shipping instructions;" if it is to be read with this meaning, unqualified acceptance establishes a waiver of the right to refuse deliveries after December 31st.

Plaintiff's letter and defendant's reply are, however, susceptible of another construction, when read in the light of surrounding circumstances. Plaintiff's letter

contains no express reference to deliveries beyond December 31st and no necessary implication that it will not require delivery before that date. Both parties are silent on the subject. Their letters may be read as if it should be implied from defendant's letter only that while shipping instructions will be changed as requested, the contract will not be modified; that when December 31st arrives defendant may exercise its option or may not, as it sees fit; that nothing need be said on that point on December 3d; that no rule of law required a further discussion of the terms of a contract well known to both parties; that silence is proper when no duty to speak exists and that plaintiff must order all deliveries to be made before December 31st to keep within the contract of the parties, as it should well understand without prompting from the adversary party; that the plaintiff's duty to say plainly what it wanted was as great as defendant's duty to state what it proposed to do.

The deductions of fact are for a jury to make.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur; HOGAN, CRANE and ANDREWS, JJ., dissent.

Judgment reversed, etc.