INTERNATIONAL FUEL AND IRON CORPORATION, Respondent, *v.* DONNER STEEL CO., INC., Appellant.

Fourth Department, June 28, 1927.

Sales — action by seller for damages for breach of contract — decision on demurrer did not establish law of case — two contracts were made, differing as to deliveries — one provided for delivery of total number of tons of scrap steel and other for specified number of tons each month — under installment contract plaintiff was in default when suspension of delivery was granted at defendant's request — contracts should be read together — question for jury as to intention of parties.

This is an action by a seller to recover damages for breach of a contract for the sale of steel scrap. Two contracts were signed by the parties; one provided for the shipment of a specified number of tons each month, and the other provided for the shipment of a total number of tons during a specified time. In September, after the contracts were made, and at a time when the plaintiff was in default in deliveries, according to the installment contract, the defendant requested a suspension of further shipments, and in April following plaintiff notified the defendant that unless the latter would accept the balance of the contract, the plaintiff would consider that the defendant refused to take the steel. To this demand the defendant replied that the shipments were suspended until such time as the defendant was in position to accept the material. There-

after this action was commenced. The plaintiff contends that all or nearly all of the law of the case was settled by a decision of a demurrer to the complaint; that that decision left but two questions of fact for the jury to decide, viz., whether the defendant broke its contract and whether the plaintiff waited a reasonable time before. instituting suit. The Special Term decision on the demurrer did not settle the law of the case for the reason that that decision dealt with the sufficiency of the complaint only, and after the amended answer was interposed, controversy between the parties assumed a broader aspect.

The two contracts executed by the parties, relating to the same subject-matter, but differing in details, must be read and construed together to determine the intention of the parties. The contract last executed did not cancel the first contract, as appears from the evidence.

The question of fact was presented, therefore, as to whether the deliveries were to be made according to the installment contract, at the rate of so many tons per month, or according to the other contract, requiring the delivery of the entire tonnage within a certain entirely elapsed period. It was error for the court to charge the jury, therefore, that the only question of fact was whether or not the plaintiff gave the defendant a reasonable time to perform before bringing the suit, for, if the jury should determine that the parties intended to have the steel delivered at a specified number of tons per month, the plaintiff was in default in the delivery of more than 5,000 tons at the time when the defendant requested the suspension of further deliveries, and in that case the defendant would not be responsible for damages based on failure to accept the tonnage, in reference to which the plaintiff had defaulted.

It was error for the court to charge the jury that the two contracts were substantially alike and also to refuse to leave to the jury the question whether the contract was an installment contract and whether deliveries for each month were a matter of separate contract; and to refuse to leave to the jury the question whether the installment provisions of the contract, if they existed, had been waived by the defendant, and if there was no waiver, whether circumstances existed which excused the plaintiff from due performance as to installments; and in not leaving to the jury the question as to the exact meaning of the contracts and the intention of the parties.

It was not the duty of the defendant, when it requested a suspension, to claim that the plaintiff had defaulted in prior monthly shipments and thereby reserve its rights in respect thereto.

APPEAL by the defendant, Donner Steel Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 25th day of May, 1926, upon the verdict of a jury; also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the same day granting the plaintiff an extra allowance of costs of $2,000.

*Kenefick, Cooke, Mitchell & Bass* [*Lyman M. Bass* and *Daniel J. Kenefick, Jr.*, of counsel], for the appellant.

*Moot, Sprague, Brownell & Marcy* [*Adelbert Moot* and *Welles V. Moot* of counsel], for the respondent.

TAYLOR, J.   The complaint alleges that on or about July 1, 1920, a written contract was entered into, which stated that the plaintiff agreed to sell and deliver to the defendant and the defendant agreed to purchase from the plaintiff betwen July 1 and November 1, 1920, 15,000 tons of steel scrap; that deliveries were made; that on September 30, 1920, defendant requested plaintiff to suspend further shipments until defendant should be in a position to accept them; that plaintiff did not accept the named condition, but on October fourth stated different conditions under which it would be willing to suspend shipments for the time being, one of the conditions being that plaintiff should be allowed to make shipments afterward " to complete its contract; " that on April 18, 1921, plaintiff notified defendant that unless the latter would accept the balance of the scrap due under the contract within thirty days from April 19, 1921, plaintiff would consider that defendant had refused to take it; that on April 20, 1921, defendant replied insisting that shipments were not temporarily suspended but were suspended until such time as defendant was in a position to accept the material.   Defendant did not accept and this action was brought for damages.

The amended answer admitted the making of the contract set forth in the complaint, but alleged that plaintiff and defendant also executed another written agreement which, among other things, stated that each month's delivery should be treated as under a separate contract independent of deliveries in other months, and that deliveries should be at the rate of 2,000 tons of heavy melting and 1,000 tons of hydraulically compressed sheet steel each month, July to November, 1920, inclusive.

The fact was established on the trial that when the Donner Steel Company's plant was in operation its process was continuous. Open-hearth furnaces, which are used in the production of steel, require their supply of scrap, limestone and iron regularly and continuously.   This was a circumstance known to both parties at the time the contract in suit was made.

The answer also set up two counterclaims based upon the failure of the plaintiff to deliver scrap and coke as agreed, and alleged damages in the sum of $107,620.   The first counterclaim was withdrawn, and as to the second the jury found no cause of action. Proof under the allegations in the counterclaims was offered in defense, without objection on that ground.

The verdict of the jury was in favor of plaintiff in the sum of $117,830.41.   This is an appeal from the judgment, from an order of the court denying a new trial on its minutes, and from an order granting plaintiff $2,000 additional allowance of costs.

256  International Fuel & Iron Corp. *v.* Donner S. Co., Inc.

Fourth Department, June, 1927.                [Vol. 221

The plaintiff, respondent, claims that all, or nearly all, of the law of this case was settled at Special Term upon the argument of a demurrer to the complaint; respondent urging that the demurrer decision left but two questions of fact (outside of damages) for the jury to decide, viz.: (1) Whether the defendant broke its contract; and (2) whether the plaintiff waited a reasonable time before instituting suit. The decision of the Special Term was unanimously affirmed by this court, without opinion, in May, 1922 (202 App. Div. 781).

It becomes necessary to ascertain just what was decided in re the demurrer. Under the general rule, all legitimate inferences deducible from the allegations of the complaint were admitted for the purposes of the demurrer. In addition to what has been stated, the complaint alleged that the promise of the plaintiff in its letter dated October 4, 1920, was that it would suspend shipments, not until the defendant was in position to accept the material, but " until further advised " (meaning, as plaintiff claims, " until plaintiff further advised the defendant "). The defendant, in support of the demurrer, claimed and now claims that the action was prematurely brought; that " until further advised " meant " until defendant further advised the plaintiff; " and that the plaintiff could not tender the balance of the scrap until the defendant was " in a position to accept it." The phrase " until further advised " was construed by the Special Term to mean that the defendant might postpone the receipt of the material, but only for a reasonable time, taking all the circumstances into consideration. " The facts alleged in the complaint are sufficient to warrant the inference that the reasonable time for the suspension expired before the action was begun." (From the Special Term opinion.) The demurrer was accordingly overruled, and the answer of the defendant interposed. It is apparent that the Special Term decision did not settle the law of this case, for the single reason that that decision dealt with the complaint only. After the amended answer, with its affirmative allegations, was interposed, the controversy between the parties assumed a much broader aspect.

Of the two contract writings involved, the first in point of time was the one made out on the contract form of the Donner Steel Company. The latter one was on the form of the International Fuel and Iron Corporation. The former contract is known and designated as No. 1909, the latter as No. 2000. They will be referred to hereafter as the " Donner contract " and the " International contract." These two separate instruments were both duly signed by the parties in interest. Each one, considered separately and alone, is unambiguous. But read together they

are inconsistent in several material respects: (1) The International form calls for the delivery of 15,000 tons of scrap at any time between July 1 and November 1, 1920, while the Donner form calls for the delivery of the scrap at a fixed scheduled rate, to wit, 2,000 tons of heavy melting and 1,000 tons of hydraulically compressed sheet steel each month July 1 to November 1, 1920; (2) the stated terms of payment differ; (3) the Donner contract contains a proviso that each month's delivery is to be treated as a separate contract, independent of the provisions for deliveries in other months; and (4) specifications are annexed to the Donner contract and none to the International contract.

The Donner contract was signed in Buffalo by Mr. Hendrickson, representing the defendant, and by Mr. Enck, representing the plaintiff, on June 18, 1920. Sometime between June thirtieth and July thirteenth, the date of this contract was changed to July 1, 1920, to conform with the date when the plaintiff could legally do business in New York State.

On July 8, 1920, Enck mailed to Hendrickson duplicates of the International contract dated July 1, 1920, requesting that Hendrickson sign both and return one, and stating that the plaintiff wanted the contracts signed " as a matter of record." Hendrickson signed and returned one copy of the contract on or about July 13, 1920. Hendrickson testified that at about this time he had a talk with Enck in Buffalo, during which absolutely nothing was said with reference to a cancellation of the Donner contract or as to its being superseded by the International contract. This testimony was not disputed.

On the very day (July eighth) on which Enck wrote the letter to Hendrickson inclosing the International contract for execution he wrote another letter to Hendrickson in which he said: " Beg to confirm verbal arrangement made with you June 30th, in connection with your contract 1909, covering steel scrap, permitting us to begin shipments July first instead of August first as originally specified."

This letter would seem to indicate that there was no thought or understanding on the part of any one that the Donner contract was to be abrogated by the International contract. Enck evidently intended to make and was making shipments under the Donner contract No. 1909. That contract was specifically mentioned in the above-quoted letter of July 8, 1920, as it was in other letters and papers issued by plaintiff. There was testimony from which the jury could have found that at no time prior to April 18, 1921 (the date of plaintiff's letter threatening suit), had plaintiff indi-

17

cated that the Donner contract was not in full force and effect. Ordinarily, a contract later in point of time would prevail over an earlier contract; but this rule will not be followed if it results in a construction which is contrary to the intention of the parties. And the court charged that the two instruments taken together made up the complete agreement.

Respondent emphasizes the pleadings, claiming that the defendant in its answer admits making the contract sued upon. This is but a half-truth. The defendant does admit the making of the contract in suit, but it also alleges a further agreement duly signed and relating to the same subject-matter. The two instruments should be read together to ascertain the true meaning and intent of the parties.

" It should be observed that the existence of an earlier writing or statements made in such a writing if known to both parties to a later writing, are part of the surrounding circumstances, and however disconnected the transactions may be which gave rise to the two writings, the existence or contents of the earlier may explain the meaning of the later, and if so should be admissible in evidence." (2 Williston Cont. § 628. See, also, Clark's New York Law of Contracts, § 812.)

Everything considered, a question of fact was presented as to whether deliveries were to be made according to the Donner contract or the International contract, and as to what force and effect should be given to each of those documents making up the complete contract. But the court charged the jury that outside of the amount of damages (and as to this with a limitation which will be referred to later) the only question of fact was whether or not plaintiff gave defendant a reasonable time to perform before bringing suit.

On the 1st day of October, 1920, under the Donner contract, the plaintiff was in default in its deliveries to the defendant in the amount of 2,642 tons for June-July, 2,413 tons for August and 30 tons for September, a total default of 5,085 tons. The defendant was obliged to close down its open hearth from October 1, 1920, to May, 1921. It was not using or buying any scrap steel during that period. During July, August and September, 1920, defendant had often communicated with Mr. Enck urging him to make plaintiff's due shipments. It is fair to assume that in its later requests for suspension of shipments defendant did not refer to the defaulted shipments due in July, August and September. The jury should have been given the right to find that the defendant was not obligated to subsequently accept deliveries in place of those due during the three months in which the plaintiff had made

defaults. And still the court charged as a matter of law that the plaintiff's tender of 6,353 tons in its letter of April 18, 1921, was fully warranted. This meant that the defendant was required to accept the 6,353 tons of scrap in April, 1921, which included the 5,085 tons of scrap undelivered in July, August and September, 1920. Whereas, even if the jury found for plaintiff, it should have been permitted to disallow damages as to the 5,085 tons, thereby greatly reducing the amount of damages chargeable to defendant.

Beginning about September 1, 1920, a correspondence began between the parties relating to a suspension of shipments. On September thirtieth a definite request for suspension was made by defendant. To be sure, in none of that correspondence was it suggested that the plaintiff was to make monthly shipments at a certain scheduled rate or that it was in default in not having made shipments in that way. This circumstance might indicate to the jury a " practical construction " of the contract; it might be claimed to indicate that the defendant waived whatever right it might have had to insist upon fixed periodical shipments; but it might also indicate that the defendant attached no practical importance to the matter at that time, since it did not then need the scrap and had not suffered damage by reason of its non-delivery. (Hence the withdrawal of defendant's first counterclaim.)

The learned court told the jury " that these two instruments or contracts constituted the agreement of the parties." This was correct. (*Byrne* v. *Savoy Shirt Co.*, 198 App. Div. 814.) But the court erred in charging the jury as matter of law that both contracts were " substantially alike," even though they differed in but a few particulars; also in refusing to leave to the jury the question whether the contract, *in toto*, was an installment contract, and whether deliveries for each month were a matter of separate contract; also in refusing to leave to the jury the question whether installment provisions of the contract, if they existed, had been waived by the defendant (*Lord Constr. Co.* v. *Edison Portland Cement Co.*, 234 N. Y. 411), and if there was no waiver, whether circumstances existed which excused the plaintiff from due performance as to installments; and in not leaving the scope and meaning of the complete contract generally to the determination of the jury. The two contracts, the correspondence between the parties relating thereto and all the surrounding and attendant circumstances permit different inferences as to the effect of the complete contract which the parties intended to and did execute. This being so, it was for the jury, not the court, to draw the inferences as to the matters above mentioned. (*Lamb* v. *Norcross Bros. Co.*,

208 N. Y. 427; *Stokes* v. *Mackay,* 140 id. 640; *U. S. Printing & Lithograph Co.* v. *Powers,* 233 id. 143, 152.)

Respondent claims that when appellant requested a suspension of shipments, it was its duty then, if ever, to claim the default in prior monthly shipments and thus " reserve its rights with respect thereto." The defendant was not obliged on September thirtieth to assert to the plaintiff that as to the 5,085 tons of undelivered and claimed-defaulted scrap it had a good defense to any action which the plaintiff might bring. This was not a case where the defendant was making claims against the plaintiff on specific grounds, and was presumed under the law to be stating all the claims it had, and was thereafter estopped from asserting other and different claims. The defendant merely asked that it be granted a favor; and upon the defendant's theory of the case it could hardly be supposed to anticipate that the plaintiff was planning to deliver defaulted tonnage, or be required at that time to claim damages, provided plaintiff should decline to comply with defendant's request. No duty, therefore, rested upon the defendant to assert this possible claim or defense on September 30, 1920, nor indeed at any time prior to the serving of its answer in this action.

Respondent also argues that the suspension granted October fourth was only " account contract 2000;" and that by accepting suspension thus characterized and claiming the benefit of it from time to time afterward, the defendant elected to waive any other instrument as being part of the contract in effect between the parties. The plaintiff's contract is known as No. 2000, but it states in the body of it " Your order No. Contract 1909." Therefore, and for other reasons hereinbefore given, the phrase " account contract 2000 " in the letter of October fourth does not necessarily import what respondent claims.

The judgment and orders appealed from should be reversed on the law and facts and a new trial granted, with costs to appellant to abide the event.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment and two orders reversed on the law and facts and a new trial granted, with costs to appellant to abide the event.