David H. Brind, J.
The plaintiffs sue the defendants for restitution after mutual rescission of a land contract. The plaintiffs, after negotiations over several months and personal inspection of the subject property, offered to purchase and did enter into a land contract for the purchase of certain property in the City of Geneva, New York, from the defendants on July 26, 1974. The land contract provided that the plaintiffs would make certain installment payments to the defendants over a period of 15 years at which time the entire unpaid balance of principal should become due and payable, and a deed given. The contract price was $26,500, and no down payment was required upon the execution of the contract. More than a month prior to entering into the land contract, the plaintiffs addressed letters to various city officials requesting any information concerning outstanding violations regarding the subject premises. In response to this inquiry, a letter was written to the plaintiff, Mr. Steven P. Naimoli, dated July 2, 1974 from the Department of Health of the City of Geneva. This letter advised the plaintiff that an inspection of the subject premises was made by city officials on June 26, 1974, and the letter contained a list of violations that were revealed upon such inspection. Subsequently, on July 24, 1974, the City of Geneva minimum housing standards officer directed a letter to the defendants stating that, based upon the inspection conducted by the city on June 26, 1974, the buildings were declared unfit for human habitation and must be vacated or repaired by September 1, 1974. It appeared upon the trial of this matter that none of the plaintiffs or defendants were aware of the contents of this letter when the land contract was signed on July 26, 1974. Immediately after entering into the land contract, the plaintiffs entered into possession of the premises, collected rents in the amount of $305, commenced cleaning, decorating and doing certain plumbing repair work. *433 In addition to these items, the plaintiffs also spent funds on publishing rental advertisements, paying for gas and electric utility service as well as paying for two stop payment orders on the checks given for tax proration at closing, all in the total sum of $1,422.16.
After the contents of the city’s letter of July 24, 1974 were disclosed to the plaintiffs sometime after they entered into possession, negotiations were entered into with the defendants to rescind the land contract and the land contract was in fact annulled and canceled by the agreement of the plaintiffs and defendants dated September 30, 1974. The rescission of the contract states as follows: "It is hereby agreed between the parties of the above Land Contract that the same shall be and is annulled and cancelled and that the sellers thereunder have returned all tax adjustments to the purchasers and the purchasers have returned all rents to the sellers.”
The facts developed upon the trial show that the tax adjustments were never made inasmuch as the payment on the checks were stopped, nor have the plaintiffs returned any of the rents collected by them. The defendants signed the rescission on September 30, 1974 and some two weeks later on October 16, 1974, the land contract containing the rescission clause signed now by the defendants as well was sent by the plaintiffs’ attorney to the defendants’ attorneys with the following statement: "This document is delivered to you under the following conditions: 1. The sale of the subject premises is rescinded. 2. That neither the rescission agreement nor any clause in the Land Contract will be used as a defense in an action by my clients against your clients for recovery of moneys expended in improvements on subject premises in the sum of $1,028.24.”
The plaintiffs bring an action in this court for restitution of all sums spent by them while in possession of the subject premises alleging fraud in the making of the land contract. The defendants deny this allegation and allege that the plaintiffs were fully aware of the condition of the building in question and the repairs needed therein and in fact during the months of negotiations the purchase price was reduced by $1,500 by the defendants in consideration of this fact. The defendants further allege that the plaintiffs’ rescission was without justification and in violation of the land contract and that as a result of the rescission the defendants were damaged in the sum of $2,500 for lost rentals alleging the apartments *434 had been vacated at the request of the plaintiffs which together with the unpaid tax proration, gives rise to the counterclaim of the defendants in the amount of $2,823.41.
Restitution requires the receipt of something of value by the defendant and does not require a wrong to have been actually committed by him. Restitution is an action at law or proceeding in equity by which despite the absence of wrongdoing, one person is held accountable to another on the ground that he would unjustly benefit or the other would unjustly suffer loss (Matter of Welton, 141 Misc 674; Guaranty Trust Co. v State of New York, 299 NY 295). Principles by which a person is entitled to restitution are the same whether the proceeding is one of law or in equity since restitution is based not upon contract or statute but upon justice, morals, equity, and good conscience. (Matter of Phillips, 10 Misc 2d 714; Matter of Taylor, 206 Misc 69; Halkin v Hume, 123 Misc 815.) Unjust enrichment does not have to be unlawful or wrongful enrichment. (Maisel v Schwartzbaum, 30 Misc 2d 880.) A person is enriched if he receives a benefit from another or another party in any way adds to the other’s security or advantage, or where he saves the other from expense (3105 Grand Corp. v City of New York, 288 NY 178). The general rule is that where a person has received a benefit from another he is liable to pay only, therefore, if the circumstances of its receipt or retention are such that, that between two persons, it is unjust for him to retain it. (Kelly Asphalt Block Co. v Brooklyn Alcatrez Asphalt Co., 190 App Div 750.) Restitution upon rescission is, however, particularly dependant upon doing justice to the opposing party in restoring him to his status quo. It is, therefore, based on the above authorities, and after hearing the testimony upon trial, and argument of counsel my view that the plaintiffs are entitled to restitution from the defendants, for otherwise unjust enrichment would occur. This also is in keeping with the agreements and actions of the parties which sought to terminate the arrangement without serious loss or advantage to either party. I do not find the commission of fraud on the part of any of the parties involved. This however is not required for restitution. Judge Wingate held in Matter of Welton (supra, p 687): "The commonest example of mistake is where both parties act in erroneous belief as to pertinent facts. Here the law is uniform that the courts, subject to countervailing equitable considerations, will intervene to compel the return of money paid as a result of such misapprehension as to facts.”
*435 However, there is a difference between what the plaintiff’s services conferred upon the defendants are worth as a question of market value, and the actual benefit which the defendants derived from the services for which compensation is sought. What then, in the instant case properly constitutes the measure of recovery? In this respect, the benefit to the defendants or the extent of unjust enrichment rather than the value of the services has been recognized by the courts as the proper measure of recovery. (Robbins v Cooper Assoc., 19 AD2d 242.) Bills and the customary charges for such services are competent to show the value of the services rendered (Hunter v Vicario, 146 App Div 93; Clapp v Schaus, 156 App Div 681).
In the case at bar the plaintiffs paid plumbing bills in repair of the said premises in the amount of $883.77. I find that the plaintiffs are entitled to restitution for this improvement as the defendants received the whole benefit from this expense. As to the items of expense paid by the plaintiffs for painting and cleaning supplies, newspaper advertising, gas and electric bills, and stop payment orders, I find that the plaintiffs are not entitled to restitution for these sums inasmuch as there was no proven benefit to the defendants for these expenditures. The plaintiffs, during the time they occupied the subject premises, collected rents in the amount of $305. This sum should be deducted from the amount of any restitution to which the plaintiffs are entitled, as it was provided in the rescission agreement that the defendants would be entitled to such rent. This leaves a balance due the plaintiffs from the defendants in the amount of $578.77. The plaintiffs are also entitled to interest on this sum from date of the rescission of the contract viz., October 16, 1974.
As to the defendants, counterclaim alleging that as the result of the plaintiffs wrongful act, defendants were damaged in the amount of $2,823.41 in loss of rentals and tax adjustments, I did not find upon trial of this matter that the plaintiffs were responsible for the vacating of the apartments which was done by the defendants themselves considerably before the execution of the land contract. The defendants agreed in the rescission agreement (supra) that the tax adjustment should be returned to the plaintiffs. In such event, the plaintiffs need not respond in damages therefor and the counterclaim must be dismissed.