**CBS, INC., Plaintiff/Counterdefendant Appellee/Cross-Appellant,**

v.

**David MERRICK, Defendant/Counterclaimant Appellant/Cross-Appellee.**

**CA Nos. 82–5520, 82–5557.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1983.

Decided Sept. 27, 1983.

William W. Vaughn, O'Melveny & Myers, Los Angeles, Cal., for plaintiff/counterdefendant appellee/cross-appellant.

Dennis E. Kinnaird, Munger, Tolles & Rickershauser, Los Angeles, Cal., for defendant/counterclaimant appellant/cross-appellee.

Before ANDERSON and NELSON, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Senior District Judge:

CBS, Inc., appellee, filed an action against David Merrick in the Los Angeles County Superior Court for rescission seeking restitution and consequential damages. Merrick removed the action on the grounds of diversity of citizenship to the federal court where he filed an answer and also a counterclaim for damages for breach of contract. Thereafter, CBS filed an amended complaint containing a separate cause of action for damages for breach of contract. After a court trial, the district court found that Merrick had breached his contract with CBS and awarded CBS the amount it had paid Merrick and his agent but denied CBS recovery for the amount paid out to Friedkin, the director, and Green, the screenwriter, after execution of and in reliance on the contract. The court denied Merrick any relief. Both parties appeal.

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

CBS contends that the district court erred in refusing to award reliance damages in addition to the award for restitution.

## Facts

David Merrick is a well known producer of entertainment programs for stage and screen. CBS is a major television network.

In early 1977, Merrick acquired the motion picture and television rights to the novel *Blood and Money*. CBS negotiated with Merrick for the right to do a mini-series based on that novel, and on August 1, 1977, the parties signed two documents—a Rights Agreement and a Production Agreement.

In the Rights Agreement, CBS agreed to pay Merrick $1,250,000 for the right to do a television series based on *Blood and Money*. CBS paid Merrick $833,333.34 when the agreement was executed and agreed to pay Merrick the balance in installments when various stages of production were completed. It was agreed that if photography did not commence within two years, that is, by August 1, 1979, the agreement would terminate and CBS would pay Merrick the balance owed on the contract. In addition, the rights to *Blood and Money* would revert to Merrick. The agreement required all modifications to be in writing.

In the Production Agreement, CBS agreed to pay Merrick an additional $250,000 to produce the show. The parties agreed to consult on the selection of the writer, director and principal actors. Merrick would then negotiate the terms and conditions of their employment, and CBS would then enter into contracts with these persons containing the terms negotiated by Merrick.

It was also agreed that when the final screenplay was delivered, the parties would prepare an operating budget. CBS had ninety days from the delivery of the final screenplay to notify Merrick whether it would proceed with the project. If CBS elected not to proceed and if Merrick had not breached the contract and was ready, willing and able to perform his duties as producer, CBS was obligated to pay Merrick the entire $250,000 and all rights to the story *Blood and Money* would revert to him.

Merrick promptly selected a director and screenwriter. The fee for the director was $500,000 regardless of whether the show was produced. The fee for the screenwriter was $250,000. When Merrick hired them, he knew that they were working on another project and that they could not immediately start to work on *Blood and Money*. Merrick failed to tell them about the deadline, and he ignored suggestions that he hire a second writer.

The first segment of the screenplay was not delivered until September, 1978, and the screenplay was not completed until June, 1979. However, by April, 1979, it was apparent that the August 1, 1979 deadline could not be met because at that time the screenplay had not been completed and at least six months' pre-production work was required before photography could start.

On April 9, 1979, Merrick met with CBS executives, and he orally agreed to extend the deadline. CBS sent Merrick proposed drafts of a written amendment. Although Merrick did not object to the basic terms, he objected to their form and complexity. CBS delivered a simplified draft to Merrick, but he never signed it.

On May 17, 1979, Merrick's attorney sent a telex to CBS stating that Merrick would not agree to any changes in the original agreements. Nevertheless, Merrick continued to act as though the deadline had been extended, and later he described the telex as "lawyer stuff." Five days before the August 1 deadline, CBS told Merrick of its decision to proceed with the production of the show. Merrick expressed enthusiasm for the project. Twelve days after the deadline, CBS and Merrick met to plan the project.

On August 24, 1979, CBS met with Merrick's agents to discuss a budget and a tentative production schedule, but in the following month Merrick notified CBS that

all rights to the story had reverted to him because CBS had not met the August 1 deadline. No further work was ever done on the project.

The district court found in favor of CBS and against Merrick on six separate grounds: (1) Merrick waived his right to enforce the deadline; (2) Merrick was estopped from asserting the deadline; (3) CBS's failure to meet the deadline was excused because Merrick contributed to the failure; (4) Merrick breached his oral agreement to extend the deadline; (5) Merrick failed to meet an express condition precedent of the contract in that he was not ready, willing and able to perform; and (6) Merrick breached the agreement before the deadline.

The court awarded CBS the $833,333.34 it had paid Merrick and also $83,333.33, the amount that CBS had paid William Morris Agency, Merrick's agents. The court denied CBS the $750,000 which CBS was contractually liable to pay the director and screenwriter for their services. The court also denied Merrick any recovery on his counterclaim.

### I. Merrick's Appeal

Merrick, in this appeal, asserts that under New York law, which the contract provides and the parties agree shall govern their controversy, the district court erred in awarding CBS rescission and restitution and any damages, and in refusing to award Merrick any relief. Specifically, Merrick asserts that the district court was clearly in error when it found in favor of CBS on the six separate grounds, including findings that Merrick had no excuse for his refusal to perform his contract with CBS and that he waived his right to have the photography commence before August 1, 1979.

■ Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it. *City of New York v. State,* 40 N.Y.2d 659, 357 N.E.2d 988, 389 N.Y.S.2d 332 (1976). A contractual deadline may be waived by acts, words or conduct inconsistent with the deadline. *Lord Construction Co. v. Edison Portland Cement Co.,* 234 N.Y. 411, 138 N.E. 39 (1923).

■ The existence of a waiver is usually a fact question; therefore, the trial court's finding should be upheld unless it is clearly erroneous. Fed.R.Civ.P. 52(a). The district court found Merrick's conduct and words inconsistent with the August 1, 1979 deadline. Merrick had hired a writer and director, both of whom were unable to work on *Blood and Money* until they had finished another project. He did not tell either of them about the deadline, and he ignored suggestions to hire a second writer. He orally agreed to waive the deadline, and he met with CBS and encouraged the development of the project both before and after the deadline had passed. These discussions amply support the district court's finding that Merrick waived his right to enforce the deadline and that CBS relied on that waiver to its detriment.

■ There is no merit in Merrick's contention that any amendment to the agreements must be in writing. The contract so provides, but a clause in a contract that requires amendments to be in writing may itself be waived. *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 387–88, 122 N.E. 378, 381 (1919) (Cardozo, J.). By his words and conduct, Merrick waived the provision. CBS's detrimental reliance on the oral modification also prevents Merrick from invoking the clause to prevent proof of the modification. *Rose v. Spa Realty Assoc.,* 42 N.Y.2d 338, 344, 366 N.E.2d 1279, 1283, 397 N.Y.S.2d 922, 927 (1977).

■ There was ample evidence to support the court's other findings that Merrick refused to perform and had breached his contract with CBS.

### II. CBS's Cross-Appeal

■ The district court found that CBS's complaint sought rescission and resti-

tution and in a separate cause of action sought damages for breach of contract. A party injured by a breach of a contract may recover both restitution and reliance damages. *See Nelson v. Hatch,* 70 A.D. 206, 75 N.Y.S. 389 (1st Dept.1902), *aff'd,* 174 N.Y. 546, 67 N.E. 1085 (1903) and *Sperry & Hutchinson Co. v. O'Neill-Adams Co.,* 185 F. 231 (2d Cir.1911). A party may rescind a contract if there was fraud in the inception or if there was a substantial breach. *Callanan v. Powers,* 199 N.Y. 268, 92 N.E. 747 (1910). The district court listed many reasons why Merrick's refusal to perform was unjustified and held that "Merrick materially breached the Rights Agreement and the Production Agreement by repudiating them without justification."

In its findings on damages, the district held that "Merrick must return to CBS the amounts which it paid him under the contract." The court also found that CBS is entitled to rescission "both because Merrick expressly repudiated the modified contract and because he breached the original contract," and it therefore awarded CBS $916,-666.67, the amount it paid both to Merrick and his agent, the William Morris Agency.

■ This award of restitution damages is proper under either rescission or breach of contract. When a breach occurs after the execution of the contract, the injured party in a contract action is entitled to both restitution and reliance damages.

■ Here, the district court found substantial breaches of contract. Nevertheless, the court limited recovery to restitution, the only recovery available when the contract is illegal or void from its inception. The court refused to allow reliance damages even though it found breaches of the contract.

This was error. This action must therefore be remanded to the district court to determine what part, if any, of the $750,000 paid to the director and screenwriter are legitimate reliance damages. In connection with this determination, the court should consider questions like reasonable reliance on the agreement, attempts to mitigate damages, the value of the screenplay delivered to CBS, and the foreseeability of the loss.

The district court's finding that Merrick is liable to CBS for breach of contract is AFFIRMED. The award to CBS of $916,-666.67 it paid to Merrick and his agent is also AFFIRMED. The denial of amounts paid to Friedkin, the director, and Green, the screenwriter, by CBS in reliance on its contract with Merrick is REVERSED and REMANDED for proceedings consistent with this opinion.

NELSON, Circuit Judge, concurring:

I concur in the majority opinion but believe that the applicable law in section II requires further clarification.

The proper measure of damages in this case depends on an interpretation of an unclear area of New York law. Although CBS denominated its complaint below as one for rescission, I believe CBS's lawsuit was effectively a breach of contract action. The complaint sought restitution instead of lost profits because of the speculative nature of the breached contract. The question presented to us, then, is whether an award of restitution when used as a substitute for speculative lost profits in a breach of contract action should preclude the recovery of additional measures of damages.

In seeking to answer this question of New York law, I have found neither a New York statute that is directly controlling nor a decision by the New York Court of Appeals that is directly on point. I would therefore have this court turn to other relevant sources of New York law and sit, in effect, as a New York state court. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

The phrase "rescission and restitution" has two meanings in New York. *Richard v. Credit Suisse,* 242 N.Y. 346, 152 N.E. 110, 111 (1926) (Cardozo, J.). When used in the

context of a voidable or mutually rescinded contract, "rescission and restitution" means that a contract is treated as void *ab initio*. *Id.* On the other hand, a party seeking rescission and restitution in a breach of contract action does not seek to undo the contract from its beginning. *Id.; see generally* D. Dobbs *Handbook on the Law of Remedies* § 12.1, at 793 (1973); 5 A. Corbin, *Corbin on Contracts* §§ 1104–1106 (1964). Instead, a plaintiff may request restitution in a breach of contract action as a substitute measure of lost profits where, as here, the true measure of lost profits would be purely speculative. *Nelson v. Hatch,* 70 A.D. 206, 75 N.Y.S. 389, 393 (1902), *aff'd* 174 N.Y. 596, 67 N.E. 1085 (1903) (law firm breached contract to prosecute lawsuit and was required to return pre-paid fee).

New York law is unclear on whether the two different meanings of the phrase "rescission and restitution" produce two different answers to the question whether a plaintiff can recover restitution plus additional damages. I conclude that they do.[1] A plaintiff who elects to rescind his voidable contract cannot avoid the contract for purposes of restitution and invoke it for purposes of recovering special damages.[2] *See Sheridan Drive-In, Inc. v. New York,* 16 A.D.2d 400, 407, 228 N.Y.S.2d 576 (1962) (no consequential damages where contract rescinded because of mistake that either was mutual or resulted from innocent misrepresentation); *Rodriguez v. Northern Auto Auction, Inc.,* 35 Misc.2d 395, 396, 225 N.Y. S.2d 107 (Sup.Ct.1962) (no consequential damages where contract rescinded because of infancy), *Naimoli v. Massa,* 81 Misc.2d 431, 366 N.Y.S.2d 573 (City Ct.1975) (no reliance damages where contract mutually rescinded). In such cases, a plaintiff suing for rescission and restitution can recover only those benefits that he has conferred on the defendant. Restatement (Second) of Contracts § 370 (1981).

In contrast, because it does not actually "rescind" the breached contract, an award of restitution in a breach of contract action should not preclude the award of additional measures of damages. I have found only two cases that reach this conclusion under New York law. *See Nelson v. Hatch,* 75 N.Y.S. at 394 (where lost profits from contract were speculative, plaintiff properly "permitted to prove the moneys which he advanced, and the expenses which he incurred in connection with it") (dictum); *Sperry & Hutchinson Co. v. O'Neill-Adams Co.,* 185 F. 231, 239–40 (2d Cir.1911) (where trading stamp suppliers' breach caused unknown loss of profits, New York law held to

---

1. Merrick cites three cases for the proposition that, prior to the 1941 enactment of a statute allowing consequential damages from contracts rescinded because of fraud, "the New York courts were strictly prohibited from awarding consequential damages in any case in which rescission and restitution was granted." Two of the three cases involved rescission and restitution in the case of a voidable contract and are therefore distinguishable from the present case. *Clark v. Kirby,* 204 A.D. 447, 198 N.Y.S. 172, 175 (1923); *Kountze v. Kennedy,* 147 N.Y. 124, 41 N.E. 414 (1895).

The third case cited by Merrick, *Rosebreit Realty Corp. v. Macceber Corp.,* 229 A.D. 791, 241 N.Y.S. 726 (1930), may be read to support Merrick's claim in the context of a breach of contract action. Still, the opinion in that case, which was only a paragraph in length, did not describe why the contract in question had allegedly been rescinded. Moreover, *Rosebreit Realty* merely held that a defendant's counterclaim must assert facts consistent with his response; the court held that a defendant could

not, in the same action, claim both that the contract was rescinded and that he had suffered damages from the breach of that contract. I therefore do not read *Rosebreit Realty* as precluding the recovery of reliance damages when a plaintiff suing for breach of contract uses restitution as a substitute for lost profits. Even if *Rosebreit Realty* clearly precluded restitution plus reliance damages, it is not a ruling by the New York Court of Appeals and is not binding on this court. *Commissioner v. Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1782.

2. In 1941, New York created a narrow exception to its rule denying reliance and consequential damages when a voidable contract is rescinded. Such damages are recoverable in addition to restitution when the contract was induced by fraud or misrepresentation. N.Y.Civ. Prac.Law § 3002(e) (McKinney 1974). In arguing that this statute describes the only circumstance in which a plaintiff can recover both restitution and reliance damages, Merrick ignores the second meaning of "rescission and restitution" under New York law.

permit recovery of restitution of price paid for unused trading stamps plus consequential damages incurred in redeeming already distributed stamps). Neither case is binding on this court, and both predate *Richard v. Credit Suisse, supra,* the opinion that gives them their analytical underpinning. Still, the conclusion of each case, although not black letter law in New York, accords with a report by New York's Law Revision Commission[3] and with the position of most commentators.[4]

I therefore concur with the majority's conclusion that a New York court would permit recovery of restitution plus additional measures of contract damages in this case. I also concur with the necessity of a remand. In rejecting CBS's claim for full contract damages and relying instead on a purely restitutionary measure, the district court failed to pass on several issues necessary to measure breach of contract damages. Both parties address these issues in their briefs on appeal, but these are topics best left to the trier of fact.

---

**3.** One party to a bilateral contract is entitled, upon the ground of repudiation or material breach by the other, to treat the contract as terminated and to maintain an action against the other for 'restitution', for the reasonable value of the injured party's part performance of the contract.... Certainly *the measure of recovery is not limited to the benefits conferred on the defendant;* the purpose of the action is to restore the *plaintiff* to the situation existing before the contract was made.

Leg.Doc. No. 65(b), Report of Law Commission at 46–47 (1946) (footnotes omitted; emphasis in original).

**4.** See e.g., Restatement (Second) of Contracts § 370, Comment a (1981); Restatement (Second) of Restitution § 15 (Tent.Draft No. 1, 1983); D. Dobbs, *Handbook on the Law of Remedies* §§ 12.1, 12.17, at 793, 880, 910–12 (1973); E.A. Farnsworth, *Legal Remedies for Breach of Contract,* 70 Colum.L.Rev. 1145, 1180–83 (1970); *cf.* Fuller & Perdue, *The Reliance Interest in Contract Damages: 1,* 46 Yale L.J. 52, 55 (1936) (recognizing that what is traditionally called the restitution interest in contract damage measures is, in fact, a subset of the reliance interest).