In re Joseph T. KOLINSKY, Debtor.

Joseph T. KOLINSKY and Conjo Realty Corp., Plaintiffs,

v.

Joseph P. GAGLIANO, Alexander M. Goren and James G. Goren d/b/a Goren Brothers, and G.B.G., Inc., Defendants.

Bankruptcy No. 86 B 20217.
No. 89 ADV. 6005.

United States Bankruptcy Court,
S.D. New York.

Feb. 6, 1990.

See also, Bkrtcy., 100 B.R. 695.

Herrick, Feinstein, New York City, Reich & Reich, White Plains, N.Y., for Joseph T. Kolinsky.

Strook & Strook & Lavan, New York City, for defendants.

## DECISION ON MOTION TO RESCIND CONTRACT OF SALE

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 11 debtor, Joseph T. Kolinsky, and his nondebtor corporation, Conjo Realty Corp. ("Conjo"), as plaintiffs, seek to rescind a contract for the sale of property in City Island, New York to the defendants, Joseph P. Gagliano, James G. Goren,

Alexander M. Goren and their corporation, known as G.B.G., Inc., to which they assigned their rights under the contract. In addition to the contract of sale covering the City Island property, the plaintiffs also seek to rescind a first mortgage and note executed by Kolinsky on behalf of Conjo and a joint venture agreement which Kolinsky personally entered into with the defendants.

Rescission is sought by the plaintiffs on the ground that the defendants fraudulently induced Kolinsky, on behalf of Conjo, to execute the sale of the City Island property by falsely representing that rezoning would be obtained within two or three years, while intending at that time not to proceed with best efforts to obtain rezoning until the defendants secured a purchaser to whom they could assign or "flip" the deal for a substantial profit. The complaint also alleges various breaches of the contract by the defendants as part of the fraudulent scheme attributed to the defendants including: (1) Failure to make any best efforts to seek rezoning approvals for the construction of 72 residential condominium units. (2) Bad faith efforts to "flip" the Conjo contract for a $5–6 million sale price without Kolinsky's knowledge. (3) Failure to furnish Kolinsky with copies of any documents submitted to any City or State agency or department with respect to the rezoning and development of the Conjo property. (4) Delaying the payment of real estate taxes on the Conjo property with the result that interest and penalties accrued, which amounts would be added to the principal balance of the mortgage and note to be repaid by Conjo. (5) Failure to advise Kolinsky of the negotiations for the execution of a contract of sale or assignment of the Conjo contract by G.B.G., Inc. to another entity known as 7 West 37th St. Realty Corp. and further failing to provide for the purchaser's assumption of the provisions of Kolinsky's joint venture agreement with G.B.G., Inc.

The defendants denied the allegations set forth in the amended complaint, but admit that they entered into a contract of sale to 7 West 37th St. Realty Corp. on December 7, 1988. Eight affirmative defenses are asserted in the defendants' answer as follows: (1) The amended complaint fails to state a claim upon which relief can be granted. (2) Kolinsky lacks standing to assert the causes of action alleged in the amended complaint against the defendants. (3) Plaintiffs are not entitled to rescind the contract. (4) Plaintiffs have suffered no compensable injury entitling them to relief against the defendants. (5) Plaintiffs claims are barred by laches. (6) Plaintiffs are not entitled to equitable relief because they have engaged in inequitable conduct and have unclean hands. (7) Plaintiffs are equitably estopped from seeking rescission of the contract of sale because they have accepted and utilized the fruits of the contract of sale in settling the bankruptcy case of Transportation Services, Inc., a wholly-owned corporation belonging to Kolinsky. (8) Plaintiffs are not entitled to equitable relief because they have an adequate remedy at law.

## FINDINGS OF FACT

1. On May 8, 1986, the plaintiff, Joseph T. Kolinsky, filed with this court a petition for relief under Chapter 11 of the United States Bankruptcy Code and continued to operate his business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Plaintiff, Conjo Realty Corp., is a New York corporation. The debtor, Kolinsky, is its sole shareholder. Conjo's basic asset is a parcel of approximately 3½ acres of real estate with buildings and improvements located on waterfront property on City Island, Bronx, New York. There are six tenants who occupy space on the Conjo property.

3. The defendant, G.B.G., Inc., is a New York corporation whose sole shareholders are the defendants, Joseph P. Galgiano, Alexander M. Goren and James G. Goren.

4. Transportation Services, Inc. ("TSI") is a New York corporation which is a tenant on the Conjo property located on City Island, Bronx, New York. The debtor, Kolinsky, is the sole shareholder of TSI, which is in the business of repairing and rebuild-

ing gasoline and diesel engines. TSI had previously filed with this court a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 30, 1986. The TSI plan of reorganization was confirmed by this court on April 18, 1988 with funds supplied by the defendant, G.B.G., Inc. from the $600,000.00 which G.B.G., Inc. advanced to TSI and Kolinsky as a down payment under the Conjo contract in question.

5. Abraham Russ and his law firm, Russ & Weyl, formerly represented TSI and Kolinsky in their Chapter 11 cases.

6. Jay Russ, who is the son of Abraham Russ, is an attorney, but is not a member of his father's firm. Jay Russ, is a member of another firm, known as Russ & Russ, which is located in the same building as Russ & Weyl. Jay Russ became an officer and director of the defendant, G.B.G., Inc., which was formed to purchase the Conjo property from the nondebtor plaintiff, Conjo Realty Corp. Jay Russ acted as a broker in the Conjo transaction, having obtained the defendants as purchasers of the Conjo property, for which Conjo agreed to pay him a $200,000.00 commission.

7. In 1985, the plaintiffs retained the law firm of Russ & Weyl to represent Conjo in the sale of its City Island property. Various prospective purchasers negotiated with Kolinsky for the purchase of the property, but without success. Abraham Russ prepared a draft of a contract with a prospective purchaser for an unsuccessful transaction immediately preceding the G.B.G., Inc. transaction which provided for a sale price of $1.7 million to be paid $100,000.00 as a down payment upon signing, and $200,000.00 together with delivery of a purchase money mortgage and note in the amount of $1.4 million at a second closing. In addition, the sum of $500,000.00 was to be paid by the prospective purchaser to Kolinsky's wholly owned corporation, TSI, as consideration for TSI vacating the Conjo property and cancelling its lease. The contract provided that the purchaser would diligently exert his best efforts to obtain all variances and rezoning necessary for the construction of fifty residential condominium units and fifty boat slips. Thirty-six months was the maximum period for obtaining any rezoning from the currently authorized manufacturing use to commercial and residential uses.

8. The proposed transaction, as in the case of previous negotiations, did not result in a consummated contract. However, the language in the proposed contract, which was drafted by Conjo's attorney, Abraham Russ, formed the basis for the contract with the defendants which was also prepared by Abraham Russ.

9. When the proposed transaction between the plaintiffs and the previous prospective purchaser fell through, Jay Russ, who was the son of Abraham Russ, introduced Kolinsky to Joseph P. Gagliano in April of 1987, as another prospective purchaser of the Conjo property. Jay Russ and his law firm of Russ & Russ represented Gagliano. Although the contract draft with the previous prospective purchaser provided for 50 condominium units and 50 boat slips, for which rezoning approval had to be achieved within 36 months, Kolinsky testified that Gagliano said that he could build 75 smaller units and 75 boat slips within 5 years and rezoning could probably be processed in less time, perhaps in two years.

10. Gagliano testified that he informed Kolinsky that it could take 10 years to obtain the necessary rezoning and development of the condominium project, Gagliano said that his architect, David Lewis, advised him to seek as much time as possible for rezoning because rezoning was a challenge in New York City. As a result of negotiations, the parties agreed to a 5–year period to allow for the required rezoning. Abraham Russ confirmed this fact when he testified that Gagliano wanted 10 years for rezoning, but that Abraham Russ negotiated it down to 5 years. Abraham Russ discussed the time frame with Kolinsky and recommended a 5–year period, which Kolinsky agreed to, although Kolinsky thought that 5 years was a long period. Abraham Russ advised Kolinsky that the 5–year time frame was not important be-

cause Conjo and Kolinsky would continue to receive rent from the tenants during that period and would have no obligations during that time because under the Conjo contract the purchaser, G.B.G., Inc., would assume the payment of real estate taxes. Abraham Russ advised Kolinsky that he thought that Gagliano and G.B.G., Inc. would obtain the necessary rezoning sooner than 5 years.

11.  Abraham Russ testified that he advised Kolinsky that they should not be concerned if Gagliano and G.B.G., Inc. wanted to assign or "flip" the Conjo contract to another entity because under the related joint venture agreement Kolinsky would receive 30% of the profits from the condominium and marina development.

12.  On April 7, 1987, the parties entered into the contract of sale for the Conjo property. The vendor was Conjo Realty Corp. The vendees were Joseph P. Gagliano and the Goren Brothers. The contract was also signed by Joseph T. Kolinsky, the sole shareholder of Conjo, who indicated his approval and acceptance of the contract. The contract contained the following basic provisions:

A.  The purchase price was $1.7 million, with $100,000 down.

B.  Purchasers would pay another $500,-000.00 to fund a plan to pay the creditors in the TSI bankruptcy case in full.

C.  Purchasers would have responsibility for attempting to obtain a rezoning of the Property to allow for condominium and waterfront development.

D.  Purchasers would have five years from the contract date to exert their best efforts to obtain the rezoning.

E.  Purchasers would attempt to obtain rezoning to construct 72 condominium units and 72 boat slips.

F.  In the event that the rezoning application was denied, or approved for fewer than 72 units and slips, or not acted upon by the expiration of the five-year period, purchasers at their *sole* option could elect to close title for the full contract price or cancel the contract.

G.  During the five years, Kolinsky and TSI could remain on the Property rent-free.

H.  During this period, Conjo could continue to collect and keep all rents from the existing tenancies.

I.  During the contract period, purchasers would be responsible for paying all real estate taxes on the Property.

13.  The provisions with respect to 72 units and boat slips, the "best efforts" requirement as to rezoning and the cancelation option available to either party were expressed in paragraph 6 of the contract which provides as follows:

6(a) This sale is subject to the property being rezoned to allow for the erection thereon of seventy-two (72) apartments (residential units) and seventy-two (72) boat slips. Purchaser shall, at its own cost and expense, provide his best efforts to obtain all variances, re-zoning, licenses and permits to accomplish the foregoing. Purchaser shall furnish Seller, simultaneous with submission thereof, with true copies of all documents, applications and exhibits prepared and submitted to obtain the required approvals; and copies of all rejections or appprovals received by him, and shall promptly pay any filing fees or deposits required to process any such applications, including but not limited to costs and expenses for abandonment of Marine Street running through the property. Seller shall cooperate in making submissions by promptly signing any applications required of it.

(b) Upon receipt of the determination of the City of New York on the application for re-zoning pursuant to Paragraph 6(a) hereof, together with all other permits required to develop the property as aforestated, Seller shall promptly notify Purchaser thereof and closing shall take place as provided in Paragraph 2 hereof. If the application is denied, or approved for less than 72 apartments and 72 boat slips, then Purchaser, in his sole discretion, shall have the option to accept such determination, waive the requirements of Paragraph 6 hereof, and close title as hereinbefore set forth; or reject such determination and cancel this contract by

giving 30 days written notice to that effect. If purchaser elects to cancel this agreement as aforestated, the mortgage described in Paragraph 2(b), together with accrued interest thereon, shall become due and payable one year after Seller received Notice of Purchaser's election to cancel.

(c) If no determination of the re-zoning application, or any other permits required to develop the property, has been obtained or rejected five (5) years from the date hereof, then either party may cancel this contract upon giving thirty (30) days written notice to that effect, whereupon mortgage described in Paragraph 2, together with interest thereon, shall become due and payable one (1) year from date such notice of cancellation is received by the noticee.

14. On April 7, 1987, the same day that the parties entered into the Conjo contract, Kolinsky entered into a joint venture agreement with Gagliano and the Goren Brothers wherein the corporation formed by the purchasers to act as the assignee of the Conjo contract namely, G.B.G., Inc., would have full charge of development, construction and sale of the condominium and marina project and that the net profits from this joint venture development project would be distributed 70% to G.B.G., Inc. and/or its designees and 30% to Kolinsky.

15. In order to cover the $100,000.00 advance to Conjo and the $500,000.00 advance to Kolinsky's corporation, TSI, for a total of $600,000.00, Conjo executed a mortgage note payable to Joseph P. Gagliano, Alexander M. Goren and James C. Goren in the sum of $750,000.00 and a first mortgage secured by the Conjo property as collateral for the $600,000.00 advance. The interest called for under the note and mortgage was 2% over the reference rate of Manufacturers Hanover Trust Company. The execution of the mortgage note and mortgage occurred at the so-called first closing on June 29, 1987.

16. Shortly after the execution of the Conjo contract and joint venture agreement, the purchasers assigned the Conjo contract and joint venture agreement to their corporation, G.B.G., Inc. Jay Russ, was designated as a director and corporate secretary of G.B.G., Inc. and acted as general counsel of G.B.G., Inc. to coordinate the rezoning efforts.

17. By letter dated March 22, 1988, Kolinsky advised Gagliano that he had received an offer to purchase the Conjo property for $1 million over the Conjo contract price paid by the purchasing defendants.

18. By letter to Jay Russ dated June 2, 1988, Kolinsky expressed concern over the lack of communication with the purchasers and the lack of progress in the development of the Conjo property since the execution of the Conjo contract on April 7, 1987. Kolinsky requested a status report especially since the purchasers had not yet paid the delinquent real estate taxes on the Conjo property and, as a result, interest and penalties would be added to his mortgage obligation.

19. In the summer of 1988, Kolinsky expressed a desire to be bought out. The defendants offered him $700,000.00 through Kolinsky's attorney, Abraham Russ, which Kolinsky rejected. At about the same time the defendants were negotiating with others to assign or "flip" the Conjo contract for $6 million.

20. On December 8, 1988, G.B.G., Inc. entered into a contract with 7 West 37th Street Realty Corp., an entity controlled by Marvin Meltzer and Richard Rosen, thereby assigning the Conjo contract upon certain conditions. It appears that this transaction is academic because the defendants are in litigation with 7 West 37th Street Realty Corp. The defendants have expressed their position at the trial in this case that they are proceeding to satisfy their obligations under the Conjo contract and that they are continuing with their efforts to obtain a rezoning for the purpose of developing the condominium and marina project on the Conjo property.

21. Although Kolinsky testified that he was aware that the Conjo contract contained a 5-year period for rezoning approval of the proposed condominium and marina project, he said that Gagliano assured him that rezoning would be obtained in less

than the five-year deadline of April 7, 1992, because it was in their mutual interest not to drag out the rezoning efforts because delay would be costly to all parties.

22. There is no covenant or representation in the Conjo contract that the purchasers will obtain rezoning of the premises for condominium development within 5 years. The 5–year provision is contained in paragraph 6(c) of the contract, which gives either party the option to cancel the contract upon 30 days written notice to the other party "If no determination of the re-zoning application or any other permits required to develop the property, has been obtained or rejected five (5) years from the date hereof...." The purchasers contended at the trial that they believed they could obtain the necessary rezoning by May, 1991, within the five-year period, which has not yet expired.

23. There is nothing in the Conjo contract which expressly obligates the purchasers to apply for the erection of 72 units and boat slips. The 72 units are the maximum number of units the purchasers could expect to erect and be binding upon Conjo, as the vendor, within the terms of the contract. If the purchasers' rezoning application is denied, or if their application is approved for less than 72 units, then the purchasers, in their sole discretion, may either cancel the contract on 30 days written notice, or they may have the option to accept the rezoning approval for less than 72 units and waive the requirements of paragraph 6 of the contract and close title. This option, which is for the benefit of the purchasers, and not for the benefit of Conjo, as the vendor, is set forth in subsection (6) of paragraph 6 of the Conjo contract.

24. The purchasers and their architect, David Lewis, concluded that the largest number of condominium units and boat slips they could design for the property was 64 units. They did not believe that any City or State agency would grant environmental or land use approval for more than 64 units. After various meetings with governmental agencies and changes in design plans, the purchasers ultimately reduced their design plans to 55 units and 55 boat slips, which they expect will achieve rezoning approval within the 5–year contract time frame. This 55 unit plan exceeds by 5 units the 50 unit proposal contained in the draft which Conjo's attorney, Abraham Russ, negotiated with the previous prospective purchaser before the defendants came into the picture. The purchasers never attempted to apply for rezoning approval for 72 condominium units and 72 boat slips for the Conjo project, nor were they obligated to apply for as many as 72 units by the terms of the Conjo contract.

25. The purchasers did represent and agree to provide their "best efforts to obtain all variances, re-zoning, licenses and permits to accomplish the foregoing...." namely, to obtain a rezoning "to allow for the erection thereon of seventy-two (72) apartments (residential units) and seventy-two (72) boat slips." As previously found, the rezoning could allow for less than 72 units if the purchasers, in their sole discretion, as authorized under the contract, elected to waive the City's denial of their rezoning application, or the City's approval of their rezoning application was for less than 72 units. Thus, the purchasers' "best efforts" obligation related not to the number of units in the rezoning application, but to provide their "best efforts to obtain all variances, rezoning, licenses and permits to accomplish" the rezoning of the Conjo property to allow for the erection of a maximum of 72 condominium and marina units, or such lesser number of units as the purchasers, in their sole discretion, may elect to accept.

26. There is no question that for more than one year after the purchasers advanced $100,000.00 to Conjo and $500,000.00 to Kolinsky's corporation, TSI, in order to enable TSI to achieve a confirmation of TSI's Chapter 11 reorganization plan, the purchasers failed to furnish the sellers "simultaneous with submission thereof, with the copies of all documents, applications and exhibits prepared and submitted to obtain the required approvals" with respect to rezoning efforts, as required under paragraph 6(a) of the Conjo contract. The sellers were not fully ap-

prised of all the documents and exhibits prepared and submitted with respect to the purchasers' rezoning efforts until after this adversary proceeding was commenced by the selling plaintiffs.

27. The purchasers also delayed the payment of the sellers' delinquent tax bills until after the commencement of this adversary proceeding, when they paid the outstanding taxes, interest and penalties, notwithstanding the provision in paragraph 4(m) of the Conjo contract that the purchasers shall assume as an expense under the contract, the payment of real estate taxes.

28. It need not be decided whether or not the purchasers' failure to provide simultaneous documentation to the sellers of all rezoning applications and exhibits and their belated payment of real estate taxes constituted compensable breaches of the Conjo contract because the plaintiffs do not seek or allege any damages for breach of contract. The plaintiffs seek to rescind the Conjo contract for bad faith and fraudulent inducement in not using best efforts in the active exploitation of the rezoning process and for material breaches which defeated the fundamental objective of the Conjo contract.

29. There is no question that the purchasing defendants were obligated under the Conjo contract to use their best efforts to obtain rezoning and all necessary permits, variances and approvals to accomplish the essential purpose of the Conjo contract to allow the erection of 72 residential units and 72 boat slips. In the exercise of their discretion, the purchasers did determine that 64 residential units and boat slips were the maximum quantity that they could expect to obtain rezoning approval for and reasonably design for the Conjo property. The purchasers later reduced their expectations to 55 residential units and boat slips. The issue is whether or not the purchasing defendants used their best efforts to accomplish the fundamental objective of the parties under the Conjo contract.

30. The evidence at the trial reveals that the purchasing defendants never made any effort to seek rezoning for 72 residential units, because they concluded that they could not fit more than 64 units into their architectural plans for the Conjo property. After various design changes, some of which were suggested by the architect for 7 West 37th Street Realty Corp. before that assignee withdrew from the project, the defendant purchasers ultimately reduced the residential units and boat slips to 55 units for which rezoning would be sought.

31. Notwithstanding the provisions in paragraph 9 of the Conjo contract, the defendants never provided Kolinsky with a copy of the contract with 7 West 37th Street Realty Corp. This point is now academic because the defendants were unable to succeed in flipping the Conjo contract to 7 West 37th Street Realty Corp., which has withdrawn from the project. Therefore, the rezoning obligation continues to be pursued by the defendants, who claim that they expect to obtain the necessary rezoning and permits for 55 units within the contractual 5–year time frame.

32. It is clear that from the April 7, 1987 contract date until the end of 1987, the defendants' rezoning efforts involved the retention of David Lewis as the architect to draw up preliminary plans for 64 residential units and 64 boat slips for the Conjo project. These architectural plans were drawn up in July of 1987 and revised in November of 1987. The defendants designated Jay Russ to guide the rezoning process. He interviewed law firms to assist in obtaining the rezoning necessary for the Conjo project. It was not until January of 1988 that substantial rezoning activities got under way when the defendants retained Robert Kandel, an attorney who is an expert on land use and zoning laws in New York City.

33. After Robert Kandel was retained by the defendants, he thereafter retained the consulting firm of Konheim & Ketcham to perform environmental analysis for the preparation of a full environmental impact statement. Kandel also retained the firm of Vandor & Vandor to prepare appropriate zoning calculations. As a result of the activities of the rezoning teams, a draft of an environmental impact statement and a

project data statement have been prepared. There were numerous meetings with governmental agencies. Without going into details, it is apparent that from January of 1988 until the present, the defendants have provided their best efforts to obtain the necessary rezoning, variances, licenses and permits to allow for the erection of the proposed condominium project on the Conjo property. In the course of these efforts, the defendants have already advanced $600,000.00 to or on behalf of the plaintiffs. Additionally, the defendants have spent nearly $250,000.00 for the preparation of an environmental impact statement and a project data statement, which are prerequisites for the proposed rezoning efforts. In order to continue with their rezoning efforts, the defendants estimate that they will have to incur additional expenses of approximately $250,000.00 to accomplish the rezoning for the Conjo project. Included among the various agencies which must approve the project are the New York City Planning Commission, the New York City Council, the Mayor's office, the Bronx Borough President, the local Community Board and the local fire department.

34. Apart from some technical breaches of the Conjo contract, such as the defendants' failure to advise Kolinsky of the attempted assignment to 7 West 37th Street Realty Corp., the delay in the defendants' payment of the Conjo real estate taxes and the defendants' failure to furnish the plaintiffs simultaneously with copies of all documents, applications and exhibits submitted to governmental agencies for required approvals, the defendants did exert serious efforts to obtain rezoning for the Conjo project. The plaintiffs did not succeed in satisfying their burden of proving that the defendants failed to provide their best efforts to accomplish this project.

35. There was no clear and convincing evidence that when the defendants executed the Conjo contract on April 7, 1987, they did not intend to provide their best efforts to obtain all variances, rezoning, licenses and permits to accomplish the Conjo project.

36. The plaintiffs have failed to establish by clear and convincing evidence that the defendants fraudulently induced the plaintiffs to enter into the Conjo contract on April 7, 1987.

37. The plaintiffs have not sustained their burden of proving that the defendants have materially and substantially breached the Conjo contract so as to defeat the fundamental objective of the parties in making the contract thereby justifying a rescission of the contract in favor of the plaintiffs.

## DISCUSSION

Rescissional relief, as distinguished from an action at law for damages stemming from a breach of contract, is equitable in nature in that a party seeking rescission wishes to void the contract for purposes of restitution. *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 N.Y. 268, 284, 92 N.E. 747 (1910). A party who elects to rescind a contract cannot avoid the contract for purposes of restitution and invoke it for purposes of recovering damages. *Sheridan Drive–In, Inc. v. New York*, 16 A.D.2d 400, 407, 228 N.Y.S.2d 576 (1962). A plaintiff suing for rescission and restitution can recover only those benefits conferred on the other party. Restatement (Second) of Contracts § 370 (1981). In the instant case, the plaintiffs do not seek damages, but contend that they have no adequate remedy at law and demand judgment that the Conjo contract, joint venture agreement and the mortgage previously approved by this court be declared null and void as a result of fraud, misrepresentation and substantial breaches of the Conjo contract which allegedly defeated the essential purpose of the contract.

The defendants have raised various procedural and substantive affirmative defenses in their answer to the amended complaint. However, these points are academic because the plaintiffs have failed to sustain their burden of proof for rescissional relief. The plaintiffs have not established by clear and convincing evidence that when the defendants entered into the Conjo contract, joint venture agreement

# 136

and mortgage on April 7, 1987, they did so without intending to use their best efforts to obtain all variances, rezoning, licenses and permits to accomplish the fundamental purpose of the Conjo contract. Proof of fraud must be established by clear and convincing evidence so that the inference of fraud is unequivocal. *Manchel v. Kasdan*, 286 App.Div. 483, 144 N.Y.S.2d 694 (1st Dept.1955) *aff'd*, 1 N.Y.2d 734, 151 N.Y.S.2d 940, 134 N.E.2d 687 (1956). Manifestly, the defendants did not apply for a rezoning of the Conjo property to allow for the erection of 72 residential condominium units and 72 boat slips because, in their discretion, their architect determined that a maximum of 64 units could be designed for the property, which was reduced to 55 units in their final design and plans. Paragraph 6(b) of the Conjo contract expressly allows the defendants, in their sole discretion, to waive the City's resection of 72 units, or approval for less than 72 units, and to close title even if rezoning is denied or if rezoning is approved for less than 72 units.

The plaintiffs contend that the defendants' obligation to "provide his best efforts" to obtain all variances, rezoning, licenses and permits to accomplish the purposes of the Conjo contract means "active exploitation in good faith" as expressed in *Western Geophysical Co. v. Bolt Associates*, 584 F.2d 1164, 1171 (2d Cir.1978). However, the court in the *Western* case went on to say "The phrase 'best efforts to promote licensing' indicates a degree of *discretion* in the selection of the promotional plan; *no absolute requirement* that Western sublicense can be read into these words." (Emphasis added). *Id.* at 1171.

Chief Judge Charles L. Brieant, Jr. ruled in *Bloor v. Falstaff Brewing Corp.*, 454 F.Supp. 258, 266 (S.D.N.Y.1978) that the term "best efforts" takes its meaning from the circumstances. In affirming the decision, the Second Circuit noted that "best efforts" does not strip the promising party of its "right to give reasonable consideration to its own interests." *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 614 (2d Cir.1979). As stated by the Court of Appeals for the First Circuit: "The standard,

whether it is expressed in terms of good faith or best efforts, cannot be defined in terms of a fixed formula; it varies with the facts and the field of law involved." *Triple-A Baseball Club Associates v. North Eastern Baseball, Inc.*, 832 F.2d 214, 225 (1st Cir.1987).

The defendants in the instant case concluded, in their sole discretion, that 72 residential condominium units and 72 boat slips could not be erected or designed within the slope of land covered by the Conjo contract. In view of the fact that they had an option under the contract to close title even if the appropriate governmental agencies rejected their rezoning application, or approved rezoning for less than 72 units, it follows that the defendants cannot be faulted for failing to use their best efforts to apply for 72 units. The fact that the defendants were not as active as the plaintiffs would have liked during the first eight or nine months in the five-year contractual time frame, or that the defendants attempted to assign the contract to another entity which thereafter withdrew from the rezoning effort, does not detract from the fact that from January, 1988 to the present date, the defendants have been actively pursuing their rezoning efforts. Moreover, the five-year contractual time frame does not expire until April of 1992. The defendants confidently believe that they will be able to succeed in obtaining the necessary rezoning approval before the five-year period expires. During this period, the plaintiffs are able to occupy the premises rent free and at the same time collect rent from the six tenants in occupancy. Additionally, the defendants have paid the delinquent real estate taxes, although belatedly, and have recognized their obligation to pay the real estate taxes with respect to the Conjo property during the five year contractual term.

The facts which emerged from the trial reveal that a rezoning application for the property in question is complicated, time-consuming and costly. Many levels of governmental authority are implicated and must be satisfied. Numerous environmental and soil tests must be conducted. Even wetlands authorities and archeological au-

thorities may be involved in the process. Although they got off to a slow start, the defendants have demonstrated that they have provided their best, "good faith" efforts to achieve a rezoning that will allow for the erection of 55 residential condominium units and 55 boat slips in connection with the Conjo property. If they are successful they will receive 70% of the net profits from the development and the plaintiffs will receive 30% of those profits. Although the plaintiffs may have another potential prospect in the wings who is willing to outbid the defendants for the Conjo property, the defendants are entitled to utilize their 5–year option, having expended substantial sums and effort in the active pursuit of the necessary rezoning for the Conjo property to allow for the proposed condominium development.

■ Rescission is an extraordinary remedy appropriate only where the breach of contract is found to be material and willful, or, if not willful, so substantial and fundamental as to defeat the objective of the parties in making the contract. *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.,* 199 N.Y. 268, 284, 92 N.E. 747 (1910); *Babylon Assoc. v. County of Suffolk,* 101 A.D.2d 207, 475 N.Y.S.2d 869 (2d Dept.1984); *Canfield v. Reynolds,* 631 F.2d 169 (2d Cir.1980); *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir.1976); *Affiliated Hospital Products, Inc. v. Merdel Game Mfg. Co.,* 513 F.2d 1183 (2d Cir.1975); *Nolan v. Sam Fox Publishing Co., Inc.,* 499 F.2d 1394 (2d Cir. 1974).

There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof and for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend

to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient. If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation. *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.,* 199 N.Y. at 284, 92 N.E. 747. Even in the absence of a substantial breach, a party may rescind a contract if there was fraud in the inducement. *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.,* 199 N.Y. at 284, 92 N.E. 747. Under New York law, fraud must be proven by clear and convincing evidence. *Leucadia, Inc. v. Reliance Ins. Company,* 864 F.2d 964, 971 (2d Cir.1988). Fraud cannot be presumed. It must be proven, and if there is left room for the inference of an honest intent, fraud has not been established. *Bernheimer v. Rindskopf,* 116 N.Y. 428, 22 N.E. 1074 (1889).

The plaintiffs in the instant case have not shown by clear and convincing evidence that they were fraudulently induced into entering the Conjo contract with the defendants and that when the defendants entered into the contract on April 7, 1987, they did not intend to perform the Conjo contract by seeking rezoning to allow for the development of the proposed residential units and corresponding boat slips. On the contrary, the evidence in this case reveals that after January of 1988, the defendants provided their best efforts for the purpose of accomplishing the contractual objectives within the 5–year time frame.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core

proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The plaintiffs have failed to sustain their burden of proving by clear and convincing evidence that they were fraudulently induced to enter into the Conjo contract with the defendants on April 7, 1987.

3. The plaintiffs have failed to sustain their burden of proving that the defendants have substantially and materially breached their contract of April 7, 1987 as to defeat the objective of the parties in making the contract.

4. The plaintiffs have failed to prove that when the defendants entered into the Conjo contract on April 7, 1987, they did not intend to seek rezoning to allow for the development of the proposed condominium residential units and related boat units within the 5–year contractual time frame.

5. The plaintiffs have failed to sustain their claims for rescission of the Conjo contract with the defendants, dated April 7, 1987.

6. The defendants are entitled to a judgment dismissing the complaint in this adversary proceeding.

SETTLE ORDER on notice.